## HEAP v. HEAP.

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—FRAUD.
    Finding of trial court that account of administrators showing sale to widow of estate's interest in partnership was false, *held,* sustained on record.

2. SAME — ESTOPPEL — FIDUCIARY RELATIONS — ACCOUNTING — DISCHARGE OF ADMINISTRATORS.
    Because of widow's lack of knowledge of facts and deception in fiduciary relationship, she is not estopped from attacking her receipts and her consent to allowance of account and discharge of administrators.

As to duties of surviving partner, see annotation in 7 L. R. A. 790.

On effect of public records as notice or evidence of notice which will set statute of limitations running against action based on fraud when fiduciary relation exists, see annotation in 22 L. R. A. (N. S.) 215.

3. SAME—FRAUD ESTABLISHED.
   That widow was induced to execute instruments by fraud of administrators, and that orders of probate court were direct results of such fraud, *held*, established by evidence.

4. JUDGMENT—RES JUDICATA—PROBATE COURTS—COLLATERAL ATTACK.
   Orders of probate court are judgments, *res judicata* of matters involved, and not open to collateral attack.

5. SAME—EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF ACCOUNT.
   Allowance of account by probate court is adjudication of each item of it.

6. SAME—FINDING OF PROBATE COURT.
   Finding by probate court of payment of claims and residue is binding on interested parties and not open to collateral attack.

7. SAME—APPEAL ONLY REMEDY TO QUESTION FINDINGS OF PROBATE COURT.
   Except on appeal, no other court may inquire into sufficiency of testimony to determine whether it sustains findings and orders of probate court.

8. EXECUTORS AND ADMINISTRATORS—EQUITY—JURISDICTION—FRAUD.
   Only procedure by which court of equity may inquire into account of administrators allowed by orders of probate court is on bill to set aside orders for fraud.

9. APPEAL AND ERROR—AMENDMENT OF BILL IN APPELLATE COURT.
   Bill for accounting by administrators is considered amended to set up proper prayer to set aside, for fraud of administrators, orders of probate court allowing account, where court decreed accounting on merits, and on appeal merits of accounting were fully briefed.

10. EXECUTORS AND ADMINISTRATORS—FRAUD—SETTING ASIDE ALLOWANCE OF ACCOUNT.
    Widow and minor son, *held*, entitled to decree setting aside, for fraud of administrators, orders of probate court approving account and discharging administrators.

11. PARTNERSHIP—RIGHTS OF SURVIVING PARTNERS.
    Surviving partners have control of partnership property and business for purpose of liquidation.

12. EXECUTORS AND ADMINISTRATORS—CHARGEABLE WITH WHAT IS RECEIVED FROM PARTNERSHIP INTEREST.

Where portion of assets of estate consists of partnership interest, administrators can only be properly charged with what they actually receive or ought to have obtained from survivor or from other sources.

13. PARTNERSHIP—SURVIVING PARTNERS NOT ENTITLED TO CHANGE INTO CORPORATION.

Authority of surviving partners does not include right to convert partnership into corporation.

14. EXECUTORS AND ADMINISTRATORS—PARTNERSHIP INTEREST—CONVERSION.

Formation of corporation by surviving partners and administrators of deceased partner's estate amounted to conversion of estate's partnership interest.

15. SAME—LIABILITY FOR LOSS.

Administrators who through neglect or active participation in converting partnership into corporation caused loss to estate are accountable therefor.

16. SAME—STANDARD OF LIABILITY FOR LOSS.

Primary standard of liability of administrators for loss of estate's interest in partnership is that of original appraisal.

17. SAME—METHOD OF ACCOUNTING FOR LOSS.

Although administrators would be chargeable for loss of estate's interest in partnership as of time of conversion, where beneficiaries contended for accounting as of time of final accounting, and court so found, they are bound thereby, and said method of accounting, not being inequitable under circumstances, is adopted, on appeal.

18. APPEARANCE—GENERAL APPEAL CONSTITUTES APPEARANCE.

General appeal from personal decree against him by defendant not served with process is appearance in appellate court, where hearing is *de novo*, which renders him subject to jurisdiction of said court.

19. EXECUTORS AND ADMINISTRATORS—SURETY ON BOND PROPER PARTY.

Surety on administrators' bond is proper defendant in suit for accounting by them (3 Comp. Laws 1929, § 14018).

20. LIMITATION OF ACTIONS—FRAUD—FIDUCIARY RELATIONS—RUN-
NING OF STATUTE.

General rule that running of statute of limitations will not be
postponed if defrauded person may discover fraud from public
records does not apply to person while fiduciary relationship
exists and nothing occurs to indicate necessity for investiga-
tion (3 Comp. Laws 1929, §§ 13976, 13978, 13983).

21. SAME—FRAUD POSTPONING RUNNING OF STATUTE AS TO PRINCIPAL
HAS SAME EFFECT AS TO SURETY.

Since concealment by administrators of fraud in accounting
operates to postpone running of statute of limitations as to
them, it also has same effect as to surety on their bond.

Appeal from Ottawa; Miles (Fred T.), J. Sub-
mitted January 8, 1932. (Docket No. 98, Calendar
No. 36,174.) Decided April 4, 1932.

Bill by Edna M. Heap, individually and as next
friend, against Lionel Heap and others for an ac-
counting as administrators and guardians. Decree
for plaintiffs. Defendants appeal. Modified and
remanded.

*Leo C. Lillie,* for plaintiffs.

*Louis H. Osterhous,* for defendants Heap and
Potter.

*Louis H. Osterhous* and *Knappen, Uhl, Bryant &
Snow,* for defendant Fidelity & Deposit Company
of Maryland.

FEAD, J. This is a bill for an accounting, prin-
cipally by Lionel Heap and George W. Potter as
administrators of the estate of Robert R. Heap,
deceased.

In 1920, William Heap, associated with his sons,
Lionel and Cecil, in the partnership of William Heap
& Sons, conveyed his interest in the firm to his five

children, on condition that they pay him $9,000 per year for life. A limited partnership of the same name was formed, with Lionel and Cecil as general partners and Robert and two sisters as special partners. The firm manufactured plumbers' woodwork. Lionel, who was a graduate law student but had not practiced law, was manager.

In 1923, Mr. Heap gave his children some bank stock and real estate, subject to their undertaking to pay some of his debts, for which the property was pledged, and to give his wife an annuity if she survived him.

Robert died intestate January 10, 1925, leaving as heirs his widow and minor son, plaintiffs here. His estate consisted of his interest in the partnership, appraised at book value of $31,512.25, and the other property given by his father, the bank stock valued at $1,000, and the real estate at $3,200. He also left $15,813.43 life insurance to his wife.

Defendant Potter is a cousin of Mrs. Heap, was brought up with her practically as a brother, and is a business man in Missouri. He and Lionel were appointed administrators of the estate of Robert and guardians of his minor son. Mrs. Heap had had no business experience and she wholly intrusted her affairs to Potter and Heap. On advice of Potter, Lionel was given the insurance money to invest. On request of Mrs. Heap, Lionel paid some of Robert's debts from the insurance money, took assignments to her, and they were allowed as claims against the estate.

October 14, 1925, the administrators filed a final account on the theory that they had sold to Mrs. Heap the whole interest of the estate in the partnership. On that basis, they charged themselves with the estate at appraised value and credited them-

selves with, (1) property selected by widow, $200; (2) widow's allowance, $1,800; (3) claims paid, $8,860.29; (4) expenses of administration, $359.84; and (5) loss on sale of property, $8,243.87. The latter they computed as the then present value of William Heap's claim for annuity against Robert's share in the firm, figured on William's expectancy of life. They reported on hand, besides bank stock and real estate, cash of $12,047.65.

On advice of the administrators, Mrs. Heap executed receipts for widow's allowances, for the claims assigned to her, for her share of the cash residue, and also signed waiver of notice of hearing and consent to allowance of the account and discharge of the administrators. Because of these instruments, the probate court, without special investigation, made an order allowing the account, made a further order assigning the residue of the estate to plaintiffs, and, on January 16, 1926, made a final order discharging the administrators and their surety.

No instruments were executed conveying the residue as ordered, but Potter and Heap charged themselves as guardians with the bank stock at $1,000 and cash of $5,523.83, and filed receipts therefor. They invested the cash in bonds. In this transaction no money was paid to Mrs. Heap in fact. On the contrary, her insurance money was used to make the cash payments necessary to settle the estate, including the money invested in bonds for the minor.

The first principal question is upon the claimed sale of partnership interest to Mrs. Heap. She denied that she had bought it. Lionel never spoke to her about it. Potter claims he told her that Lionel and his attorney thought it the best way to close the estate and he advised her to do whatever they wanted. Accordingly she signed the papers

presented to her at the final accounting but without understanding them. The best that can be said of the testimony of Potter and Heap is that each understood that the other had made sale to Mrs. Heap, but neither had done so. They gave her no instrument of conveyance of the interest. The account rendered was so drafted that it did not show on its face a sale to her. There was nothing on the face of any of the papers executed by her which indicated that she was buying the partnership interest.

Nor does the subsequent conduct of the parties support the claim of sale. The partnership had been paying Mrs. Heap a monthly allowance. Following the probate proceedings the partnership books continued to carry Robert's capital account under his name, and allowances thereafter paid to Mrs. Heap were charged to Robert's account. Lionel continued to carry his bank account as administrator, and made payments to Mrs. Heap by check thereon. He collected interest on the minor's bonds, sometimes paid it to Mrs. Heap through his check as administrator, and sometimes credited it to Robert's partnership account. He made no reports as guardian. In 1928, he gave Mrs. Heap the only statement of the affairs of the estate which he made to her. It listed the partnership interest at $21,386.73, and certain bonds as "the property of Edna M. Heap and R. R. Heap, Jr." In February, 1928, the partnership business, which had continued under the management of Lionel Heap, was incorporated under the same name by the general partners and some strangers. Robert was named as a stockholder, with 2,382 shares of no par value stock but which upon the financial statement represented $23,820. Mrs. Heap was not informed of the incorporation, never consented to it, and no stock was ever issued to her, and no notice of corporate meetings given her although thereafter

allowances were paid to her as before. The record disclosed no book account, paper, or other written evidence, nor, indeed, any act of the parties subsequent to the final account which would indicate to Mrs. Heap that the administrators claimed or understood that she had purchased her son's interest in the firm, or which would indicate that she understood she had so purchased. It is difficult to conceive that, had a sale been made, one or the other would not have done an act in the course of years which would have indicated unequivocally to the other that he understood Mrs. Heap had purchased the interest.

Upon this record, we must sustain the findings of the circuit court that no sale had been made to Mrs. Heap, that, regardless of the actual intent or understanding of the administrators, the final account was false.

The record does not indicate that the administrators appropriated any of the property to their personal use. Potter had little to do with the administration except by way of advice to Mrs. Heap in support of the plans of Lionel. It is apparent that Lionel was anxious to relieve the partnership of the interest of a minor and the consequent oversight of a court. He seems to have considered the business a sort of family affair, as later he and Cecil pledged the minor's bonds as security for their loans, apparently made for partnership benefit. He may have considered that a sale of the partnership interest to Mrs. Heap would be beneficial to her. But his primary motive in the transaction appears to have been to relieve the partnership of complications.

Neither of the administrators can plead ignorance of business practices or fiduciary relationships.

Their education and experience, as well as the law, charge them with knowledge of the duty to be fair in dealing with, and frank in disclosing the facts to, a woman who had placed her affairs unreservedly in their hands. She was on unfamiliar ground both as to business and court procedure, as they well knew. While it does not appear that they intended to deprive her of her property, it does appear that they sedulously refrained from explaining the account to her and informing her of the purport of the transaction to which they were trying to commit her. They used her confidence in them to secure her signature to the instruments, the purpose and effect of which she did not understand and which she signed because she trusted them. Whatever their secret intention, their subsequent dealings with her gave no indication that the estate was closed, but, from all appearances to her, they were still administering it. Their intention must be found from their acts.

Because of lack of knowledge of the facts and deception in a fiduciary relationship, Mrs. Heap is not estopped from attacking her receipts and her consent to allowance of account and discharge of the administrators. On the contrary, it must be held that she was induced to execute the instruments by the fraud of the administrators, and that the orders of probate court were the direct results of such fraud.

At this point the contentions of counsel require some notice of the pleadings and practice, to avoid a precedent for unauthorized procedure, but particularly to ascertain the basis upon which an accounting may be had.

The bill does not pray that the final account or the orders allowing account, assigning residue, and

discharging administrators and their surety be set aside. Plaintiffs claim the account as allowed must stand as to the debits reported by the administrators, but that they are entitled to attack the credits for falsity. They cite no authority for this position. Defendants contend the whole account must stand, and, in the alternative, if any part of it is rejected, a new account must be made.

The orders of probate court are judgments, *res judicata* of the matters involved, and cannot be attacked collaterally. *Chapin* v. *Chapin,* 229 Mich. 515. The allowance of an account is an adjudication of each item of it. *Hall* v. *Grovier,* 25 Mich. 428. The probate court determined, as it had to do to render the judgments, that the administrators had paid all debts, allowances, and residue reported by them. The finding of the payment of claims and residue is binding on the interested parties and is not open to question in a collateral proceeding. *Clark* v. *Fredenburg,* 43 Mich. 263. Except on appeal, no other court may inquire into the sufficiency of the testimony to determine whether it sustains the findings and orders nor, indeed, whether they were supported by any evidence. *Morford* v. *Dieffenbacker,* 54 Mich. 593; *Egan* v. *Grece,* 79 Mich. 629; *Holden* v. *Lathrop,* 65 Mich. 652. The orders, therefore, were judgments that the receipts were valid. The only procedure by which a court of equity may inquire into the account is on bill to set aside the orders for fraud.

While the bill did not pray that the probate orders be set aside, the facts alleged in it, if proved, would support such relief. It contained a prayer for general relief. Defendants did not plead to the jurisdiction of the court to order an accounting nor that the orders of probate court were *res judicata.*

As the case was presented to the circuit court, the orders of the probate court seem to have been wholly disregarded by counsel. The court decreed an accounting upon the merits. In this court the merits of an accounting were fully briefed. In view of the situation, an amendment to set up the proper prayer may be considered made if the general prayer does not cover the proper relief. *Gillen* v. *Wakefield State Bank,* 246 Mich. 158. Plaintiffs are entitled to a decree setting aside the probate orders for fraud. This leaves the whole case open to inquiry to strike an account upon an equitable basis.

With the account set aside, the administrators are chargeable as though it had not been made. It is familiar law that the surviving partners have control of the partnership property and business for the purpose of liquidation. In the articles of the partnership at bar the surviving partners were authorized to continue the business for five years after the death of one. The liability of an administrator in such cases has been stated:

"In cases like the present, where a portion of the assets consisted of a partnership interest, he could only be properly charged with what he actually received or ought to have obtained from the survivor or from other sources." *Loomis* v. *Armstrong,* 49 Mich. 521.

The authority of a surviving partner does not include the right to convert the partnership into a corporation. The formation of the corporation at bar amounted to a conversion of the partnership interest of the estate. The administrators not only used no means to prevent the conversion or to conserve the interests of the estate but the active administrator managed the conversion. The partnership interest, through the neglect of one and the

active participation of the other administrator, became lost to the estate, and they must be held accountable for it.

Strictly speaking, the administrators would be chargeable for the loss as of the time of conversion, but, except as reported in the financial statement, the value of the partnership interest at that time was not made the subject of proof. Plaintiffs contend for an accounting as of the time of final account on the theory of sale. The court so found, and plaintiffs have not appealed. The value of the partnership interest on such theory was less than that of the original appraisal, which is the primary standard of liability, and would be more favorable to defendants than value at the time of conversion so far as indicated by the evidence here. In view of all the circumstances, such method of accounting is not inequitable and will be adopted.

An account will be made up as follows:

1. The administrators will be charged with the value of the partnership interest, less deduction for lien of William Heap as of the time of and as shown in the final account, with legal interest.

2. They will be credited with all claims allowed by the probate court in the final account except those paid out of the insurance money and the widow's allowances.

3. As the administrators are charged as upon sale at the time of accounting, they are entitled to credit for the sums which the partnership subsequently paid to Mrs. Heap out of its funds, not including the bond moneys which went through the books of the firm. The moneys so paid are not traceable to the insurance fund and cannot be credited to it.

4. As the bank stock was sold by the pledgee to pay the debt for which it was collateral when given

by William Heap and the balance divided among his children, and it does not appear that the administrators could have salvaged more for the estate, they will be charged only with the amount received.

5. It does not appear that the administrators had power or means to remove the lien upon the real estate and they cannot be held liable for it.

The suit included an accounting by Lionel Heap as trustee of the insurance fund. Some of it was used to purchase the bonds carried in the minor's estate. Of right they belong to Mrs. Heap, should have been awarded to her, and so credited to Lionel. Neither Mrs. Heap nor Lionel personally appealed from the decree, which confirmed them in the minor's estate. On further proceedings, counsel may indicate their ideas of what should be done about it. In any event, if it be determined that the bonds shall remain in the estate of the minor, the guardians are equitably entitled to credit for income therefrom paid to Mrs. Heap because it went to the support of the minor.

Defendant Potter was not served with process. He appeared in court with counsel but took no part in the hearing except to testify. Personal decree on accounting ran against him. He took a general appeal. We need not determine the power of the circuit court to enter the personal decree against him. Because the hearing in this court is *de novo*, the general appeal was an appearance which renders him subject to the jurisdiction of this court. 4 C. J. p. 1346; Ann. Cas. 1914 C, 699, note.

Defendant Fidelity & Deposit Company, surety on the administrators' bond, is a proper defendant. 3 Comp. Laws 1929, § 14018. On settlement of the decree, counsel may present their contentions as to the form of relief against it, in view of *Grady* v.

*Hughes,* 80 Mich. 184, and 3 Comp. Laws 1929,
§ 15934.

Defendant Fidelity & Deposit Company pleaded
the statute of limitations, 3 Comp. Laws 1929,
§ 13976, which requires action on the bond of an
administrator to be brought within four years after
his discharge. It is conceded that the bar does not
apply as to the minor. 3 Comp. Laws 1929, § 13978.
If setting aside the order of discharge does not re-
vive the bond, it nevertheless appears that the cause
of action was fraudulently concealed from Mrs.
Heap and that she brought suit within two years
after discovering the fraud. 3 Comp. Laws 1929,
§ 13983. She discovered the fraud when her allow-
ance was discontinued and she retained an attorney
to investigate. Before that the conduct of the ad-
ministrators was such as to indicate to her that the
estate had not been closed and nothing transpired
to cause her to become suspicious, having in mind
her confidence in them. We recognize the general
rule that the running of the statute will not be post-
poned if the defrauded person may discover the
fraud from public records. This rule does not apply
to a person while a fiduciary relationship exists and
nothing occurs to indicate the necessity for investi-
gation. 22 L. R. A. (N. S.) 215, note. As the con-
cealment at bar would operate against the principal,
it operates also against the surety to postpone the
running of the statute. 37 C. J. p. 980; 17 R. C. L.
p. 966.

The accounting here outlined is substantially dif-
ferent from that decreed. A large number of items
are involved upon which there is considerable dis-
pute between counsel. We think that, unless coun-
sel can agree on an accounting within 15 days, the
cause should be remanded to the circuit court to

strike an account in accordance with this opinion and report its findings to this court for decree.

The decree will be modified, and further proceedings had as above provided. Costs will await final decree.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.