Carl A. THORNELL, Plaintiff,

v.

The CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant.

Civ. A. No. 3310.

United States District Court
W. D. Michigan, S. D.

Sept. 5, 1958.

Arthur H. Schwab, Chicago, Ill., S. Eldridge Sampliner, Cleveland, Ohio, Victor G. Hanson, Detroit, Mich., of counsel, for plaintiff.

Erwin W. Roemer, Chicago, Ill., Robert A. Straub, Detroit, Mich., and Paul O. Strawhecker, Grand Rapids, Mich., of counsel, for defendant.

KENT, District Judge.

This is an action upon two counts, the first being an action for personal injuries under the Jones Act, 46 U.S.C.A. § 688, and the second, for maintenance and cure under the General Maritime Law.

It appears that the plaintiff, Carl A. Thornell, while under the age of twenty-one (21) years, was employed as a coal passer aboard the defendant's car ferry Spartan, a vessel duly enrolled and licensed for the coasting trade, and engaged in commerce and navigation upon the Great Lakes. On July 4, 1954, the plaintiff was injured. He claims that the injuries resulted from negligence on the part of the defendant.

This action was originally instituted in the United States District Court for the Northern District of Illinois, Eastern Division, but was by that court transferred to this court, "in the interest of justice and for the convenience of the parties and witnesses." The matter is before the court on the defendant's motion to dismiss the action or in the alternative for a summary judgment. The motion sets up an alleged release pursuant to the authority and order of the Probate Court for the County of Mason, State of Michigan. A hearing was had at which time defendant produced the Registrar of Probate of Mason County, and introduced in evidence the originals of the settlement papers from the files of that Probate Court, certified copies of such instruments were attached to the defendant's motion.

The court is satisfied that under the provisions of Rule 12(b) Federal Rules of Civil Procedure, 28 U.S.C.A., a motion to dismiss is not appropriate since the complaint to which the motion is directed does state a claim upon which relief can be granted. The motion will, therefore, be treated as a motion for summary judgment under the provisions of Rule 56, Federal Rules of Civil Procedure. That Rule provides in part:

"(b) A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

The Court of Appeals for the Sixth Circuit in reviewing the considerations which should be before the court in determining motions for a summary judgment has said in Aetna Insurance Co. v. Cooper Wells & Co., 6 Cir., 1955, 234 F.2d 342, 344:

"The trial court should be slow in granting a motion for summary judgment depriving a party of his right to trial by jury where there is a reasonable indication that a material fact is in dispute. * * *

"The function of a motion for summary judgment is not to permit the court to decide issues of fact, but solely to determine whether there is an issue of fact to be tried."

And in the more recent case, Knapp v. Kinsey, 6 Cir., 249 F.2d 797, at page 801, the court said:

"The construction and applicability of the summary judgment rule has been before us on several previous occasions. In Begnaud v. White, 6 Cir., 170 F.2d 323, 327, we said, 'The authorities indicate that the trial judge should be slow in passing upon a motion for summary judgment which would deprive a party of his right to a trial by jury where there is a reasonable indication that a material fact is in dispute,' citing Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. In Lloyd v. United Liquors Corp., 6 Cir., 203 F.2d 789, 793, we quoted with approval from the opinion in Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, as follows, 'We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. * * * Such a judgment, wisely used, is a praiseworthy and time-saving device. But, although prompt despatch (sic.) of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than the delay.' Other cases in which we held that summary judgment proceedings did not afford the losing party an adequate opportunity to develop the facts and should not have been used are Estepp v. Norfolk & Western Railway Co., 6 Cir., 192 F.2d 889; Bellak v. United Home Life Insurance Co., 6 Cir., 211 F.2d 280, 283, and Hoy v. Progress Pattern Co., 6 Cir., 217 F.2d 701, 704.

"In Stevens v. Howard D. Johnson Co., 4 Cir., 181 F.2d 390, 394, the Court said, 'It must not be forgotten that, in actions at law, trial by jury of disputed questions of fact is guar-

anteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits.' The opinion further stated that a motion for summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. (Cases cited.) And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. (Cases cited.)' In Griffeth v. Utah Power & Light Co., 9 Cir., 226 F.2d 661, 669, the Court said, 'Resort to summary judgment procedure is futile where there is any doubt as to whether there is a fact issue. All doubts upon the point must be resolved against the moving party.'"

At the time of the hearing on the motion, the plaintiff asserted, through his counsel, that he had a right to go to the jury on the issue of the propriety of the release. It is the theory of the plaintiff that because he was a seaman the order of the Probate Court of Mason County approving the settlement is subject to review by a jury in this court.

It is the theory of the plaintiff that all of the circumstances surrounding the entry of the Probate Court order should be reviewed by a jury in this court and that such a jury should be permitted to pass upon the propriety of the entry of the order of the Probate Court. While this may seem to be an unusual theory a transcript of the arguments of counsel in this case on June 12, 1957, will effectively demonstrate that plaintiff's counsel had no other theory. Plaintiff relies entirely upon Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239, and quotes as follows:

"A seaman in admiralty who attacks a release has no such burden imposed upon him as that to which the Pennsylvania rule subjects him. Our historic national policy, both legislative and judicial, points the other way. Congress has generally sought to safeguard seamen's rights. The first Congress, on July 20, 1790, passed a protective act for seamen in the merchant marine service, safeguarding wage contracts, providing summary remedies for their breach, and requiring shipowners to keep on board fresh medicines in condition for use. 1 Stat. 131. The fifth Congress, July 16, 1798, 1 Stat. 605, originated our present system of marine hospitals for disabled seamen. The language of Justice Story, sitting on Circuit in 1823, described the solicitude with which admiralty has traditionally viewed seamen's contracts:

" 'They are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trustent with their trustees. * * * If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable. * * * And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the sea-

men.' Harden v. Gordon, 11 Fed. Cas. at pages 480, 485, No. 6,047.

"In keeping with this policy, Congress has itself acted concerning seamen's releases in respect to wages by providing that a release for wages must be signed by a seaman in the presence of a shipping commissioner, and that even then, 'any court having jurisdiction may on good cause shown set aside such release and take such action as justice shall require.' General Congressional policy is further shown in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 915, 916, 33 U.S.C.A. §§ 915, 916, in which all releases not made under the express terms of the Act are declared invalid.

"The analogy suggested by Justice Story in the paragraph quoted above, between seamen's contracts and those of fiducaries and beneficiaries remains, under the prevailing rule treating seamen as wards of admiralty, a close one. Whether the transaction under consideration is a contract, sale, or gift between guardian and ward or between trustee and cestui, the burden of proving its validity is on the fiduciary. He must affirmatively show that no advantage has been taken; and his burden is particularly heavy where there has been inadequacy of consideration.

"The wardship theory has, as was recognized by the courts below, marked consequence on the treatment given seamen's releases. Such releases are subject to careful scrutiny. 'One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.' Harmon v. United States, 5 Cir., 59 F.2d 372, 373. We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

"This general admiralty rule applies not only to actions for maintenance and cure but also to actions under Section 33 of the Merchant Marine Act. That law is to be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards."

and see also Guerrero v. American-Hawaiian Steamship Company, 9 Cir., 222 F.2d 238, 240.

"No one disputes the premise that seamen are under the protection of the courts, that courts will scrutinize releases when they are questioned, and that the burden is on the employer to show the validity of the release. No one here disputes the right of the seaman to a jury trial of the issues he raises so long as there are unresolved issues between the parties."

The attention of counsel was drawn to the fact that the releases involved in the cases cited did not result from court proceedings.

At the time of the argument of defendant's motion it was suggested to counsel for the plaintiff that the principal issue was whether the full faith and credit clause of the Constitution of the United States, Art. IV, Sec. 1:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof."

should apply in this case, which subject was not mentioned in the brief which counsel was permitted to file subsequent to the hearing. There are some circumstances under which the Full Faith and Credit Clause does not apply. Milliken

v. Meyer, 1940, 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278:

"Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry. * * * But if the judgment on its face appears to be a 'record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself.' * * * In such case the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based. * * * Whatever mistakes of law may underlie the judgment * * * it is 'conclusive as to all the *media concludendi.*' "

Likewise fraud is another ground for collateral attack. Cors v. State Mutual Life Assurance Co., 6 Cir., 1952, 196 F.2d 625. In the Cors case, the Court of Appeals for this Circuit stated at page 627:

"We are of the view that, since the Indiana Probate Court had jurisdiction of the guardianship proceedings in question, its order in this case is not subject to collateral attack and must be given full faith and credit under Article IV, Section 1, of the Constitution of the United States."

■ In the State of Michigan the Probate Courts are given general supervision over minors and the estates of minors. Comp.Laws 1948, § 703.1 et seq., M.S.A. § 27.3178(201) et seq., and it is specifically provided in Comp.Laws 1948, § 703.18, M.S.A. § 27.3178(218):

"Every such guardian shall also settle all accounts of the ward, and demand, sue for and recover all debts due to him, *or may, with the approval of the judge of probate, compound for the same, and give a discharge to the debtor, on receiving a fair*

*and just dividend of his estate and effects. * * *.*" (Emphasis supplied.)

See also Metzner v. Newman, 224 Mich. 324, 194 N.W. 1008, 33 A.L.R. 98, where the entire subject is reviewed by the Supreme Court of Michigan. And see also McMann v. General Accident Assurance Corp., 276 Mich. 108, 109, 267 N.W. 601, where that court in quoting with approval stated:

" 'If the probate court had jurisdiction to make the order for compromise and settlement of the infant's claim in the tort action then pending in the circuit court, such order cannot be challenged collaterally. To set aside a settlement made by and under an order of the probate court which it had jurisdiction to make as unfair or fraudulent, there must be a direct proceeding for that purpose, a bill in equity.' "

The language of Mr. Justice Brewer in speaking for the Supreme Court of the United States in Thompson v. Maxwell Land-Grant & Railway Co., 168 U.S. 451, 465, 18 S.Ct. 121, 126, 42 L.Ed. 539, is appropriate in view of the claims made by the counsel for the plaintiff:

"It would be strange, indeed, if, when those authorized to represent minors, acting in good faith, make a settlement of claims in their behalf, and such settlement is submitted to the proper tribunal, and, after examination by that tribunal is found to be advantageous to the minors and approved by a decree entered of record, such settlement and decree can thereafter be set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors, and that it would have been better for them to have retained rather than compromised their claims. If such a rule ever comes to be recognized it will work injury rather than benefit to the interests of minors, for no one will make any settlement of such claims for fear that it may thereafter be

repudiated. The best interests of minors require that things that are done in their behalf, honestly, fairly, upon proper investigation and with the approval of the appropriate tribunal, shall be held as binding upon them as similar action taken by adults."

■ This court is satisfied that in the absence of fraud the order of the Probate Court of Mason County, Michigan, entered December 8, 1954, in an appropriate proceeding in which there is finding:

"* * * The court being fully advised in the premise and it appearing to the court that it would be for the best interests of said minor to effect and confirm the settlement referred to in the petition."

is conclusive as to the rights of the minor plaintiff in this case.

■ Our attention has been called to Mortensen v. Alcoa S. S. Co., D.C.N.Y. 1951, 101 F.Supp. 228, 229, where the court said:

"Defendants oppose plaintiff's application to amend on the ground that the plaintiff cannot attack collaterally in this action the judgment obtained in Florida. I do not agree that this is the state of the law. The Court of Appeals for this Circuit has determined this principle adversely to the defendants. Griffith v. Bank of New York, 2 Cir., 1945, 147 F.2d 899, 160 A.L.R. 1340, certiorari denied 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992. Judge Clark, writing for the Court, recognized that the Federal Courts have equity powers which may be exercised in the proper case to set aside, enjoin enforcement of, or ignore a state court judgment obtained by fraud. The mere fact that the alleged fraud has been carried to the point where it has culminated in a judgment does not immunize the alleged fraud from attack."

We are satisfied, as was the court in Mortensen, supra, that it is not necessary to require this plaintiff to file a special action in the state courts of Michigan to set aside the order of the probate court,

even though such orders are judgments. Heap v. Heap, 1932, 258 Mich. 250, 259, 242 N.W. 252, 255:

"The orders of prcbate court are judgments, *res judicata* of the matters involved, and cannot be attacked collaterally. Chapin v. Chapin, 229 Mich. 515, 201 N.W. 530. * * *."

■ The Federal Rules of Civil Procedure do not apply to proceedings in admiralty, Rule 81(a) (1) Federal Rules of Civil Procedure. There is no admiralty rule comparable to Rule 9(b) Federal Rules of Civil Procedure, which provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * *."

Generally speaking, there is a broad discretion vested in the trial court in determining the propriety of pleadings in admiralty. Podgorski v. United States, D.C.1949, 87 F.Supp. 731, 733, where the court held:

"While it is true that the Federal Rules of Civil Procedure, 28 U.S. C.A., are not applicable to Admiralty suits the trend is to apply their liberal provisions to Admiralty suits."

And as stated in Darling's Estate v. Atlantic Contracting Corp., D.C.Va.1957, 150 F.Supp. 578, 580:

"Nor does the provision of Rule 81(a) (1) of the Federal Rules of Civil Procedure prevent a district court from using the civil procedure rules as a guide in the exercise of its sound discretion when deemed most expedient for the due administration of justice."

■ The plaintiff in this case has filed nothing which could be deemed sufficient to avoid the release given pursuant to the probate court order, as asserted by the defendant. However, in view of the argument of counsel, unsupported by proper affidavit, this court is of the opinion that an opportunity should be provided to the plaintiff to avoid the release if the plaintiff claims that there was fraud perpetrated upon the Probate Court of Mason County, in securing approval of the settlement and release.

In summary it may be stated that this court is satisfied that the Probate Court of Mason County had jurisdiction over the person of the plaintiff and over the subject matter of the settlement at the time that the order of December 8, 1954, was entered.

That the order of the Probate Court of Mason County is entitled to full faith and credit unless there was fraud perpetrated upon that court in securing the order approving the settlement and authorizing the release.

That the plaintiff should be extended an opportunity to void the impact of the release if the plaintiff is willing to file an appropriate affidavit to support a claim of fraud, or amend the complaint heretofore filed in the cause to allege fraud or other circumstances which should avoid the order and release.

That the plaintiff should have thirty (30) days from the date of the filing of this opinion to file such affidavit or amended complaint. That if such affidavit or amendment, asserting fraud, is not filed within thirty (30) days from the date of the filing of this opinion an order should be entered granting defendant's motion for a summary judgment.