# STATE OF MICHIGAN

# COURT OF APPEALS

GINA L. NIEDOLIWKA as Personal
Representative of the Estate of DIANE C.
GUALDONI,

        Plaintiff-Appellant,

v

DEBORAH J. INGLIN,

        Defendant-Appellee.

UNPUBLISHED
October 18, 2016

No.   327576
Macomb Probate Court
LC No.   2014-211751-CZ

Before:  GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Plaintiff, Gina L. Niedoliwka, as personal representative of the estate of Diane C. Gualdoni, appeals as of right the probate court's grant of summary disposition pursuant to MCR 2.116(C)(7) in favor of defendant, Deborah J. Inglin, in this claim involving the ownership of a life insurance policy.  We reverse and remand.

## I.  SUBSTANTIVE FACTS

Plaintiff is the daughter of the late Diane C. Gualdoni and personal representative of her mother's estate.  Defendant is the sister of Gualdoni.  Defendant and Gualdoni's father, Clyde Thornton, purchased a variable appreciable life insurance policy from Prudential Life Insurance Company (Prudential) in August 1990.  The policy was a prepaid policy meaning that Thornton had prepaid all the policy premiums.  The face value of the death benefit was $742,500.  In January 2000, Thornton transferred ownership of the policy to Gualdoni and defendant in equal shares.  The policy provided that if either Gualdoni or defendant died, each sister's equal share of the policy would pass to her respective estate.  Prudential mailed defendant a copy of the policy endorsement acknowledging that both she and Gualdoni, and their respective estates, had the right to exercise any benefit under the policy.  Gualdoni passed away on October 30, 2002.

On March 8, 2003, defendant contacted Prudential to take out a loan on the policy.  On May 21, 2003, Prudential informed defendant that in order to make any changes to the policy she would need a written acknowledgment and/or consent from a representative of Gualdoni's estate.  In July 2003, defendant provided Prudential with Gualdoni's death certificate and tried to transfer the policy solely into her own name but was unsuccessful.  Thereafter, defendant informed plaintiff that in order to preserve the estate's interest in the policy, plaintiff would need

to sign a request to change ownership form indicating that both plaintiff and defendant were joint owners of the policy.

On January 28, 2004, defendant signed a request to change ownership form and sent it to plaintiff. Defendant insisted that plaintiff send the form back to her rather than sending it directly to Prudential. Plaintiff reviewed the form and signed it on February 20, 2004, indicating that both defendant and Gualdoni's estate would continue to be joint policy owners. Plaintiff mailed the form back to defendant as defendant insisted. Plaintiff alleged in her complaint that, after receiving the form signed by plaintiff, defendant altered the form to indicate that plaintiff consented to defendant being the sole owner of the policy and then defendant submitted the form to Prudential. Specifically, plaintiff alleged that defendant "whited out" the joint policy owner box that was checked by plaintiff, and instead checked the "one policy owner box." Plaintiff further alleged that defendant "whited out" plaintiff's name on the form where she was listed as a joint policy owner as representative of her mother's estate. The resultant falsified change of ownership form represented to Prudential that plaintiff had agreed to the removal of her mother's estate as a joint owner of the policy when the exact opposite was the case.

Defendant admitted that she submitted a change of ownership form to Prudential in March 2004. However, defendant asserted that she never made any changes to the form herself. Defendant stated that any changes that may have been made were done by either her father or her late mother, at her father's request. Defendant stated that, after she received the change of ownership form back from plaintiff, she sent it to her father, the insured, for his review. After he sent it back to her, she faxed the form to Prudential. Defendant stated that both her father and Prudential told her that after Gualdoni died, ownership of the policy passed to the "surviving owner" and therefore she believed that she was the sole owner of the policy. Defendant testified that her father wanted her to be the sole owner of the policy and he changed the ownership. Defendant testified that her parents "were extremely upset about anyone being an owner except for me. So all of the documents and all of the requests were given to my father and he decided that it was best for the family if I was the owner."

Shortly after submitting the request to change ownership form to Prudential, defendant sought to take out the maximum loan on the policy. On March 11, 2004, Prudential issued a check to defendant in the amount of $270,168.40 as a loan disbursement on the policy. Over the next several years, defendant received additional loan disbursements and cash distributions. Plaintiff alleged that defendant extracted $792,258.20 from the policy between March 11, 2004, and December 20, 2011, and ultimately cashed out the policy. Defendant's father passed away on April 22, 2013. Plaintiff spoke with defendant about the policy approximately six months after her grandfather died. Defendant told plaintiff that there was nothing left in the policy to disburse and that defendant was the sole owner of the policy.

Plaintiff filed her complaint on January 23, 2014, claiming that as representative of Gualdoni's estate she was entitled to 50% of the disbursements, loans, and any other benefits under the life insurance policy due as a result of defendant's fraud. Plaintiff also alleged that she had no knowledge of defendant's wrongful conversion of estate assets, and that she could not have known about it because of defendant fraudulently concealing those facts. Less than two weeks later, on February 6, 2015, plaintiff filed motions for declaratory judgment and summary disposition under MCR 2.116(C)(10). Plaintiff requested the court declare her 50% ownership

interest in the insurance policy and determine that there was no dispute as to the facts underlying her other claims. Plaintiff acknowledged that a six-year statute of limitations applied to her claims but argued that she adequately pleaded and presented sufficient evidence regarding defendant's affirmative acts of concealment to fit within the tolling provision of the fraudulent concealment statute and thus her complaint was timely filed.

Defendant answered plaintiff's complaint and filed a motion for summary disposition under MCR 2.116(C)(7). Defendant contended that plaintiff's claims were barred by the applicable statute of limitations because defendant's alleged actions occurred nearly ten years earlier, around March 4, 2004, the date that plaintiff alleged defendant submitted an altered form to Prudential that changed ownership in the policy. Defendant also asserted that plaintiff failed to sufficiently plead facts in her complaint or present any evidence of affirmative acts of concealment by defendant to satisfy the requirements of the fraudulent concealment statute and toll the statute of limitations.

After a hearing on the motions, the probate court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7), holding that plaintiff did not satisfy the requirements of the fraudulent concealment statute in order to toll the statute of limitations.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary disposition de novo. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). In accordance with MCR 2.116(C)(7), a party may file a motion to dismiss a lawsuit when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law [or] statute of limitations . . . ." "When considering a motion brought under MCR 2.116(C)(7), it is proper for this Court to review all the material submitted in support of, and in opposition to, the plaintiff's claim." *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 222; 779 NW2d 304 (2009). "In determining whether a party is entitled to judgment as a matter of law pursuant to MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations, affidavits, or other documentary evidence and construe them in the plaintiff's favor." *Id.* at 222-223. "If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine." *Kincaid*, 300 Mich App at 523. "However, if the parties present evidence that establishes a question of fact concerning whether the defendant is entitled to immunity as a matter of law, summary disposition is inappropriate." *Id.*

## III. STATUTE OF LIMITATIONS

The statute of limitation for fraud claims is six years. MCL 600.5813; *Boyle v Gen Motors Corp*, 468 Mich 226, 228; 661 NW2d 557 (2003). The elements of actionable fraud are:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in

reliance upon it; and (6) that he thereby suffered injury. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012).]

In general, a claim for fraud includes a statement involving a past or existing fact. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). However, "[f]raud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Id*.

There is no dispute that the latest the claim accrued in this case was sometime in 2004. Therefore, under MCL 600.5813, the statute of limitations would have expired six years later in 2010, and plaintiff's complaint was filed well beyond this limitation period. But, "[u]nder MCL 600.5855 . . . the statute of limitation is tolled when a party conceals the fact that the plaintiff has a cause of action." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996). MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

"The plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Sills*, 220 Mich App at 310. This requires specific allegations of the acts or misrepresentations comprising the fraudulent concealment and proof that they were designed to prevent subsequent discovery. *Phinney v Perlmutter*, 222 Mich App 513, 562-563; 564 NW2d 532 (1997). Furthermore,

> [a]s our courts have repeatedly stated, [f]raudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent. The fraud must be manifested by an affirmative act or misrepresentation. Thus, the plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery. There must be concealment by the defendant of the existence of a claim or the identity of a potential defendant[.] [*Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004) (internal citations, quotation marks, and editing marks omitted).]

"Mere silence [on the part of the defendant] is insufficient." *Sills*, 220 Mich App at 310.

The probate court held, "reluctantly and regretfully . . . that in order to invoke the tolling provision of MCL 600.5855, a defendant must engage in some separate and distinct action *after* the alleged wrongdoing occurred" (emphasis added). The plain language of MCL 600.5855, as

-4-

well as the cases interpreting MCL 600.5855—*Sills*, *Phinney*, and *Doe*—do not support the probate court's statement of law. Indeed, case law interpreting the plain language of MCL 600.5855 indicates that a plaintiff must plead both a fraud and, separately, an affirmative act or misrepresentation designed to prevent subsequent discovery of that fraud. *Sills*, 220 Mich App at 310. However, there is no temporal requirement in the statute or the cases interpreting the statute to support the probate court's interpretation. Thus, we find that the probate court made a mistake of law when it interpreted MCL 600.5855 to require that the affirmative act of concealment or misrepresentation by defendant designed to prevent plaintiff's discovery of a claim must occur *after* the alleged fraud.

In this case, we also conclude that the fraud itself and the affirmative act or misrepresentation designed to prevent subsequent discovery of that fraud, although part of the same ultimate plan or scheme, do constitute separate and distinct acts. Accepting plaintiff's factual allegations as true, *Bronson Methodist Hosp*, 286 Mich App at 222-223, leaves no question that defendant committed the fraudulent act when she altered the completed form and sent the falsified form to Prudential, thereby defrauding both Prudential and plaintiff. The next step in the analysis is to determine whether plaintiff has shown that there was an affirmative act or misrepresentation on behalf of defendant that was aimed at preventing inquiry or hindering the acquirement of information disclosing a cause of action. *Phinney*, 222 Mich App at 562-563; *Sills*, 220 Mich App 310.

The probate court held that "the alleged fraudulent act in this case of altering the acknowledgement of ownership form cannot serve as both the fraud and the act concealing the fraud." But the probate court failed to consider the fact that defendant engaged in an overt act designed to conceal the fraud from plaintiff—even before defendant completed the fraudulent act itself—by inducing plaintiff to sign the change of ownership form that defendant had already signed and insisting that plaintiff send the form back to her. Plaintiff testified at her deposition that she asked defendant why the policy ownership had to be changed and defendant responded that it was necessary to continue the estate's interest in the policy. In reliance on defendant's representations, plaintiff signed the change of ownership form provided to her by defendant as personal representative of her mother's estate. It was reasonable for plaintiff to believe that defendant would send the completed form to Prudential in the same condition it was in when she added her signature to defendant's signature on the form. Instead, defendant falsified the form for her own gain, faxed the form to Prudential, and committed an intentional fraud.

Defendant's plan of lying to plaintiff about securing the estate's interest in the policy together with directing plaintiff to sign the form and send the completed form back to her rather than directly to Prudential was clearly designed to "prevent[] inquiry or hinder[] the acquirement of information disclosing a cause of action." *Phinney*, 222 Mich App at 562-563; *Sills*, 220 Mich App 310. In doing so, defendant's goals were in fact two-fold, 1) to secure plaintiff's signature on the document as representative of Gualdoni's estate, and 2) to get plaintiff to read and rely on the contents of the form. Securing plaintiff's review of and reliance on the contents of the form were far more important than obtaining the actual signature because if defendant was going to submit a falsified document to Prudential anyway, she could have just forged plaintiff's signature. But forging plaintiff's signature would not have achieved the same result that defendant realized by insisting that plaintiff herself check the "jointly owned" box, and then signing the form after reading in black and white print that the policy was jointly owned and that

-5-

that both parties' consent was required before "any subsequent changes or requests" could be made to the policy. These facts show that plaintiff pleaded both a fraud and, separately, an affirmative act or misrepresentation designed to prevent subsequent discovery of that fraud. *Sills*, 220 Mich App at 310.

Defendant vehemently argues that even if she did commit the act of fraud, she did nothing more and only remained silent for years. Defendant relies on the fact that mere silence on the part of the defendant is insufficient to constitute an affirmative act or misrepresentation designed to prevent subsequent discovery of that fraud. *Sills*, 220 Mich App at 310. While it is true that defendant remained silent for many years while taking loans and disbursements out of the policy, both defendant and the probate court failed to recognize the affirmative acts of concealment defendant committed *before* committing the fraudulent act.

MCL 600.5855 also requires reasonable diligence on the part of the plaintiff; in particular, if the plaintiff could have discovered that liability existed, the statute does not operate to toll the limitations period. *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 48; 698 NW2d 900 (2005). "If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know." *Doe*, 264 Mich App at 643 (citation, quotation, and editing marks omitted). In addition, the limitations period will not be postponed if the plaintiff could have discovered the fraud from public records. *Heap v Heap*, 258 Mich 250, 263; 242 NW 252 (1932); *Prentis Family Foundation*, 266 Mich App at 45 n 2.

Defendant's affirmative act of concealment, namely inducing plaintiff to sign the change of ownership form that defendant had already signed and insisting that plaintiff send the form back to her, lulled plaintiff into a false sense of security about the state of the life insurance policy. The last plaintiff saw the form, it was signed by both owners, and indicated that the policy was jointly owned. The property at stake was proceeds from a life insurance policy insuring the life of Thornton, defendant's father and plaintiff's grandfather. In this case, reasonable diligence would mean that the beneficiaries of the life insurance policy do nothing and wait until the insured passes away and then make a claim on the proceeds of the policy at that time. Supporting this assumption with regard to this particular policy is the fact that Thornton prepaid the policy premiums; therefore, nothing was due on the policy, so plaintiff did not need to check to see if further premiums were owed. While it is true that one aspect of this policy is that loans could be taken out against the face value of the property, both owners would need to consent to the loan. Thus, there would be no need for plaintiff to check to see if defendant ever took out any loans against the policy because the change of ownership form that both she and defendant signed provided assurances that defendant would need her consent before making "any subsequent changes or requests" to the policy. Unlike a mortgage, the change of ownership form was not recorded as a matter of public record and therefore plaintiff could not have discovered the falsified form from the public record. See *Heap*, 258 Mich at 263; *Prentis Family Foundation*, 266 Mich App at 45 n 2. After Thornton died, it was only a matter of weeks before plaintiff checked into the policy. Under these facts, we conclude that plaintiff fulfilled the reasonable diligence requirement of MCL 600.5855.

In sum, we hold that plaintiff can assert MCL 600.5855 to toll the statute of limitations in this case. Plaintiff alleged a fraud as well as affirmative acts on the part of defendant that were

clearly designed to prevent subsequent discovery of that fraud. Defendant's fraud was manifested by her affirmative act of sending the signed change of ownership form to plaintiff for plaintiff's signature and inducing plaintiff to rely on its contents, as well as defendant's misrepresentation that she was going to submit the form as it was to Prudential. *Doe*, 264 Mich App at 642. The record also reveals that plaintiff met the reasonable diligence requirement of MCL 600.5855 under the particular facts of this case concerning the proceeds of a prepaid, jointly owned life insurance policy. Therefore, MCL 600.5855 operates to toll the limitations period and plaintiff timely filed her complaint. See *Prentis Family Foundation*, 266 Mich App at 48; *Doe*, 264 Mich App at 643. Accordingly, the probate court erred when it granted summary disposition in favor of defendant under MCR 2.116(C)(7).

## IV. EQUITABLE ESTOPPEL

Plaintiff also contends on appeal that she presented sufficient evidence to toll the applicable statute of limitations period under the equitable estoppel doctrine. Defendant responds that because defendant did not take affirmative steps to induce or prevent plaintiff from bringing or discovering a cause of action, plaintiff's claims cannot be tolled under the doctrine of equitable estoppel. The probate court did not address plaintiff's equitable estoppel argument; therefore, this issue is not preserved on appeal. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). However, where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the court is not precluded. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183, 521 NW2d 499 (1994). This Court reviews de novo the circuit court's decision whether to apply equitable principles, such as equitable estoppel. *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011).

"[T]he doctrine of equitable estoppel is a judicially created exception to the general rule that statutes of limitation run without interruption. It is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar." *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263, 270; 562 NW2d 648 (1997). The doctrine however, is unavailable to plaintiff here. In *Trentadue v Buckler Lawn Sprinkler*, our Supreme Court held that equitable tolling was not available in the case of fraudulent concealment because the statute, MCL 600.5855, provides specific limitations and exceptions for tolling based on discovery. 479 Mich 378, 390, 391-392; 738 NW2d 664 (2007). The Court determined that it was the Legislature's intent to supersede the common law doctrine with the creation of a comprehensive and exclusive statutory scheme. *Id*. at 390-391. *Trentadue* instructed courts to "not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of" a controlling statute that "negate[s] the application of equity." *Id*. at 406. We therefore reject the employment of equitable estoppel as a tolling mechanism here.

## V. FIDUCIARY RELATIONSHIP

Plaintiff also contends that she presented sufficient evidence to establish the existence of a confidential relationship of trust to fit within the fiduciary relationship exception to the affirmative act requirement of the fraudulent concealment statute. There is an exception to the affirmative act rule when the defendant has a fiduciary relationship with the plaintiff. *Brownell v*

*Garber*, 199 Mich App 519, 527, 503 NW2d 81 (1993). When the parties are in a fiduciary relationship, there is an affirmative duty to disclose. *Id*.

Because we determined that defendant committed an affirmative act within the meaning of the fraudulent concealment statute, it is not necessary for us to determine whether the probate court erred in concluding that the parties did not have a fiduciary relationship. Nonetheless, we note that we find no error in the probate court's determination that a fiduciary relationship did not exist. The only ground for finding that plaintiff's trust, confidence, and reliance on defendant was reasonable was her deposition testimony that she asked defendant why the policy ownership had to be changed and defendant responded that it was necessary to continue the estate's interest in the policy, and then plaintiff acted in reliance on this information when she signed the form and sent it back to defendant. This is insufficient. Simply because the parties were similarly situated with regard to the life insurance policy, and defendant took the lead on managing the transition of the policy ownership after Gualdoni died—albeit for nefarious purposes—does not support the recognition of a fiduciary relationship. Accordingly, we agree with the probate court's conclusion that defendant did not have a fiduciary relationship with plaintiff.

## VI. PLAINTIFF'S REMAINING CLAIMS

Plaintiff last argues that she has stated viable causes of action for claim and delivery, quantum meruit, common law conversion, and tortious interference with a contract, and that the probate court should have granted summary disposition on these claims in her favor pursuant to MCR 2.116(C)(10). Essentially, plaintiff asks this Court to hold that summary disposition should have been granted in her favor rather than in defendant's favor. The probate court did not rule on or even address the substance of plaintiff's motion for summary disposition because the probate court's ruling was limited to its holding concerning the applicable statute of limitations with regard to plaintiff's fraudulent concealment claim. Therefore, the record may not be sufficiently developed with regard to these causes of action. Because appellate review is limited to issues that the lower court actually decided, *Detroit Leasing Co v City of Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005), we decline to review the merits of this argument. On remand, the probate court will have the opportunity to consider the merits of plaintiff's arguments.

Reversed and remanded for further proceedings consistent with the opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens