OPINION. Black, Judge: Although respondent, in the statutory notice, determined that payments made by petitioner during 1955 in the total amount of $130,000 constituted an addition to the cost basis of his stock in General American deductible as capital loss, and alternatively that the payments gave rise to nonbusiness bad debt losses, he has abandoned the first ground on brief and now requests that we find that the payments gave rise to nonbusiness bad debts, deductible only as short-term capital loss under section 166(d) of the Code.[3] Petitioner, however, contends that his payments on the guaranty gave rise to business bad debts deductible under section 166(a).[4] Eespondent does not deny that petitioner did, in fact, make payments on the guaranty of General American’s note, nor that the debts of General American to which petitioner thus became subrogated were actually worthless at the end of the taxable year 1955. The sole issue is whether payments on the guaranty gave rise to business or nonbusiness bad debt losses. Petitioner contends that he was in business with Erwin, Schwarz, and George Cowden under the management contract and that his guaranty of General American’s note was in furtherance of that business by extending his credit on behalf of General American that increased commissions might be realized under the management contract. Eespondent contends that operations under the management contract did not constitute a business separate and apart from General American; and that even if we should conclude that it did constitute a separate business, petitioner was not actively engaged therein, but merely passively extended his credit for the purpose of corporate expansion. Uncontradicted testimony was to the effect that General American entered into the management contract with C. B. Erwin & Company; that such management contracts are not unusual in the industry, and are considered to establish separate businesses; that the partnership opened offices, selected agents, hired supervisory personnel, and contracted with local general agents to sell General American’s insurance. While General American and the partnership shared the same general offices, bookkeeper, and accounting records, we are satisfied that operations under the management contract constituted a business activity separate and apart from General American. Petitioner, Schwarz, and George Cowden acquired interests in the partnership contract in return for their extension of credit by way of guaranteeing the notes of General American. It appears that the guarantors always envisaged that Erwin would manage the operations of the business. Petitioner’s contribution to the business was not limited to the mere extension of his credit. He interviewed or checked upon some of the prospective agents hired under the management contract; he consulted with Erwin and the others as to expansion of activities into new territories; and he provided such information as he had which might be helpful in expanding the business. We conclude that petitioner was engaged in such a business operation under the management contract as would support deduction of a business bad debt. Cf. Montell Davis, 11 T.C. 538. The money borrowed by General American on notes guaranteed by petitioner was used to permit General American to expand its business capabilities. It was the reasonable expectation of the guarantors that as General American prospered, so they would reap increased profits under the management contract. Such a situation, it seems to us, clearly establishes a proximate relationship between the guaranties of the notes and the business operations under the management contract. Cf. J. T. Dorminey, 26 T.C. 940. That petitioner was a minority shareholder in General American does not prevent the debt from being business incurred. Cf. Stuart Bart, 21 T.C. 880. Respondent’s contention that petitioner guaranteed the note of General American to the extent of $750,000 in protection of a $57,000 capital investment is unsupported by the record. Neither do we conclude that petitioner’s position as a director of General American prevents the deduction here sought, for he was under no duty to extend his credit on behalf of the corporation, and that he did so was clearly attributable to his interest in the management contract. Respondent maintains that Putnam v. Commissioner, 352 U.S. 82, affirming 224 F. 2d 947, affirming a Memorandum Opinion of this Court, is dispositive of the issue herein. In that case the issue presented was whether payment of certain guaranties of corporate obligations by the taxpayer was fully deductible as a loss incurred in a transaction entered into for profit, though not connected with a trade or business, or properly treated as a nonbusiness bad debt. The Supreme Court there decided that “the loss sustained by the guarantor unable to recover from the debtor is by its very nature a loss from the worthlessness of a debt.” The taxpayer in the Putnam case was a lawyer whose relationship to the corporation, the notes of which he guaranteed, was that of organizer and stockholder. The instant case is thus factually different from the Putnam case in that petitioner was not alone a shareholder and director of General American, he was the holder of a substantial interest in a separate business, the agency contract, the prosperity of which was dependent upon the success of the corporation. No such situation existed in the Putnam case. We conclude, therefore, that petitioner incurred losses in 1955 in the amount of $130,000 deductible as business bad debts. Decisions will be entered under Rule 50. SEC. 166. BAD DEBTS. (d) Nonbusiness Debts.— (1) Generai. rule. — -In the case of a taxpayer other than a corporation— (A) subsections (a) and (c) shall not apply to any nonbnsiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt dedtned. — Por purposes of paragraph (1), the term “non-business debt” means a debt other than— (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer’s trade or business. (a) General Rule.— (1) Wholly worthless debts. — There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially worthless debts. — When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.