Benjamin A. STRATMORE and Helen Stratmore, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 851–65.

United States District Court
D. New Jersey.

Oct. 3, 1968.

Kenneth T. Stratmore, Wayne, N. J., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., by David A. Wilson, Jr., Robert F. Sama, John G. Milano, Attys., Dept. of Justice, and David M. Satz, Jr., U. S. Atty., by Kenneth P. Zauber and Martin Tuman, Asst. U. S. Attys., for defendant.

AUGELLI, Chief Judge:

Plaintiffs, husband and wife, bring this action for a refund of income taxes for the year 1959, alleged by them to have been paid in error and illegally collected by defendant through the office of the District Director of Internal Revenue for the District of New Jersey. The jurisdiction of the Court is invoked under 28 U.S.C.A. § 1346(a) (1).

The facts have been stipulated and are as follows:

Plaintiffs were officers and stockholders of B. B. Rider Corporation (Rider) and General Manufacturing Corporation (General) in 1959 and prior thereto. They acquired an interest in Rider in 1938, and were instrumental in forming General in 1950.

Rider is an authorized General Motors Frigidaire dealership which sells and services Frigidaire products in northern New Jersey. Its needs for capital are fixed and vary little, if at all. It operates on a cash on completion basis.

General is engaged in the business of manufacturing precision component parts for aircraft engines for major engine manufacturers and certain agencies of the United States Government. General has varying needs for large amounts of working capital because of expensive material outlays and the long lead time between fabrication of the parts and payment from its custom-

ers. It began operating with a capitalization of $50,000.00. However, because of unforeseen problems and delays, the capital requirements became greater than anticipated.

Plaintiff Benjamin A. Stratmore was and still is president of both Rider and General. His primary duties during the past 15 years have been to secure financing for these corporations to meet their operational needs. After exhausting bank credit, Stratmore was compelled to borrow money for both corporations from a number of individuals. These persons would ordinarily loan money to either Rider or General, but as security therefor would require personal guarantees by way of indorsements on promissory notes of the corporations. Plaintiffs complied with this requirement when the loans were made and indorsed the notes of said corporations. Without the personal indorsements of plaintiffs, these loans could not have been obtained and the corporations would have ceased to function. Plaintiffs gave their indorsements and lent their credit to Rider and General with the expectation that the use of these funds by the corporations would provide them with increased receipts by way of salary, and also enhance the value of their proprietary interests therein.

In August, 1957, both Rider and General filed voluntary petitions in bankruptcy under Chapter XI of the Bankruptcy Act. A plan was agreed upon whereby creditors of the corporations were to be paid 25% of the amounts due them. As part of the plan, plaintiffs did not file any claims against the corporations in the Chapter XI proceedings. The arrangement was successfully completed, and Rider and General were discharged from bankruptcy in December, 1958.

Some creditors, however, who held promissory notes of Rider and General that had been indorsed by plaintiffs, sought payment of the balance due thereon from plaintiffs by reason of their indorsements of the notes. In an effort to cut their losses, plaintiffs entered into

agreements with said creditors whereby plaintiffs agreed to pay part of the debt owed on said corporate notes in full settlement of their obligations as indorsers or guarantors thereof. In 1959, after the corporations had been discharged from bankruptcy, plaintiffs paid these creditors, pursuant to said agreements, a total of $17,088.00.

In their income tax return for 1959, plaintiffs treated the $17,088.00 so paid to creditors as a nonbusiness bad debt under 26 U.S.C.A. § 166(d). As such, deductibility was limited to $1,000.00. On this basis, plaintiffs paid an income tax of $5,904.61, plus interest penalties of $518.58, or a total of $6,423.19. Thereafter plaintiffs filed an amended income tax return in which they claimed, as fully deductible under 26 U.S.C.A. § 165(c) (2), the sum of $17,088.00. A claim for refund was then filed for the taxes and interest paid. No action having been taken on said claim for more than six months after submission, plaintiffs brought this action for refund.

In support of their claim for refund in this Court, plaintiffs contend that the $17,088.00 which they paid as guarantors of the promissory notes of Rider and General was either a loss incurred in a transaction entered into for profit, though not connected with a trade or business, under 26 U.S.C.A. § 165(c) (2) or, alternatively, a business bad debt incurred in a trade or business, under U.S.C.A. § 165(c) (1). Defendant, on the other hand, contends that the payments made by plaintiffs on their guarantees of the corporate notes constitute contributions to capital of the corporations or, in the alternative, that said payments constitute nonbusiness bad debts under 26 U.S.C.A. § 166(d).

■■■ Plaintiffs' contention that their loss of $17,088.00 is fully deductible under 26 U.S.C.A. § 165(c) (2) because it was incurred in a transaction entered into for profit, though not connected with a trade or business, cannot be sustained. The Chapter XI proceedings and plaintiffs' settlement on their guarantees resulted in a full discharge of the corporate obligations of Rider and General. Thus the guarantors became subrogated to a worthless debt. A loss sustained by a guarantor unable to recover from his debtor is, by its very nature, a loss from the worthlessness of a debt, and there is no basis to consider it as an ordinary nonbusiness loss sustained in a transaction entered into for profit. Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956).

■■■ Consideration will now be given to plaintiffs' alternative contention that the $17,088.00 was a business bad debt incurred in a trade or business, and hence fully deductible under 26 U.S.C.A. § 165(c) (1). A business bad debt must arise in connection with the taxpayer's trade or business. Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963). In that case a majority stockholder-officer loaned funds to his corporation and later claimed them as business bad debts. The Court held that "[a]bsent substantial additional evidence, furnishing management and other services to corporations for a reward not different from that flowing to an investor in those corporations is not a trade or business * * *." If plaintiffs in the case at bar had acted as guarantors solely to protect their investment, they could not claim a business bad debt loss. However, the stipulated facts establish that plaintiffs were motivated not only to protect their investments, but also to protect and increase their salaries as corporate officers. In Whipple, the Court stated:

"Nor need we consider or deal with those cases which hold that working as a corporate executive for a salary may be a trade or business. E.g., Trent v. Commissioner of Internal Revenue, 291 F.2d 669 (C.A.2d Cir.). Petitioner made no such claim in either the Tax Court or the Court of Appeals and, in any event, the contention would be groundless on this record since it was not shown that he has collected a salary * * * or that he was owed one. Moreover,

there is no proof * * * that the loan was necessary to keep his job or was otherwise proximately related to maintaining his trade or business as an employee."

In Trent v. Commissioner of Internal Revenue, 291 F.2d 669 (2 Cir. 1961), Trent made loans to a corporation of which he was an officer and minority stockholder. He was told that unless he made these loans, the business would have to shut down. Thereafter, the corporation sought to obtain additional loans from Trent. He refused to make further advances, and was fired. He then attempted to collect the loans he had made to the corporation, but was unable to do so because it was without funds. Trent deducted these loans in his income tax return as business bad debts under Section 166 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 166. The Commissioner disallowed the deduction, claiming that the debt was a nonbusiness debt under Section 166(d) of. the Code. The Court of Appeals reversed, holding that "loans made by an employee to his employer in order to retain his job are as much 'created * * * in connection with a taxpayer's trade or business' as loans by the employer to customers, suppliers, or employees in the interest of the business would surely be."

In Cowden v. Commissioner, 34 T.C. 819 (1960), the Tax Court upheld the business bad debt deduction of a minority stockholder-director of a corporation resulting from payments on a guaranty of a corporate obligation which had a proximate relationship to a business which the taxpayer and his associates regularly carried on under a management contract with the corporation. The Court stated:

"The money borrowed by General American on notes guaranteed by petitioner was used to permit General American to expand its business capabilities. It was the reasonable expectation of the guarantors that as General American prospered, so they would reap increased profits under the management contract. Such a situa-

tion, it seems to us, clearly establishes a proximate relationship between guaranties of the notes and the business operations under the management contract."

In Jaffe v. Commissioner, 26 TCM 1063 (1967), the Tax Court found the bad debts sustained by two stockholder-employees, who guaranteed loans to their wholly owned corporation, to be business bad debts and fully deductible under 26 U.S.C.A. § 166(a) since the taxpayers were motivated by a purpose to protect their jobs. The Court said:

"[I]t is now * * * clear that being an employee of the corporation may itself constitute a trade or business, so that if the stockholder-employee's loan to his corporation is made in order to protect his job or is otherwise proximately related thereto, the resulting debt is not a 'nonbusiness' debt within section 166(d)."

In Fitzpatrick v. Commissioner, 26 TCM 1 (1967), the taxpayer was a co-guarantor of corporate obligations of a corporation of which he was an employee and in which he was also an investor. In support of his claim for deductibility of the loans made to the corporation, the taxpayer contended he was carrying on the trade or business of rendering services for pay by virtue of his position as vice president of said corporation. The Commissioner had ruled that the taxpayer had incurred a nonbusiness bad debt. The Tax Court agreed with the taxpayer, and found that his dominant motive in acting as co-guarantor of the loans was to protect and maintain his employment; also, that the guaranty arose in connection with and was proximately related to the taxpayer's trade or business, i. e., that of rendering services for pay.

The Trent, Cowden, Jaffe and Fitzpatrick cases support plaintiffs' claim that their loss is fully deductible as a business bad debt. Rider and General would have ceased to function but for the loans obtained for said corporations by plaintiffs. And those loans would not

have been made without plaintiffs' guaranty. A cessation of business by the corporations would have resulted in a loss of plaintiffs' salaried positions. It has been stipulated that plaintiffs gave their indorsements and lent their credit to Rider and General with the expectation that the use of the borrowed and guaranteed loans by the corporations would provide plaintiffs "with increased receipts by way of salary and enhance the value of their proprietary interests in said corporations." Such motivation is sufficient under the cited cases.

Cases which deny deductibility of loans as business bad debts are all distinguishable on their facts. Examples are Weddle v. Commissioner of Internal Revenue, 325 F.2d 849 (2 Cir. 1963); Kelly v. Patterson, 331 F.2d 753 (5 Cir. 1964); Rietzke v. Commissioner, 40 T.C. 443 (1963); Millsap v. Commissioner, 46 T.C. 751 (1966).

In Weddle, the Tax Court found that the loans made by the taxpayer to her corporation were made in her role as a stockholder or investor, and that any benefit received by the taxpayer was indirect and insufficient to establish a proximate relation to her trade or business of being an employee. The Court of Appeals, however, expressed the view that the necessary proximate relation might be established even where the primary motivating cause for the loan having been made was from the standpoint of a stockholder-investor, if there was a significant secondary motivation related to the trade or business of being an employee.

In the Kelly case, it was likewise found that the loans were not deductible because not related to the trade or business of being an employee. The Court of Appeals recognized, however, that a determination of the issue as to whether or not a debt is so related "depends on the motivation of the taxpayer in making the loans which created the debt." In Rietzke, the Tax Court was unable to conclude, on the basis of the record before it, that the taxpayer "was required to guarantee these loans in order to keep his job or to maintain his trade or business as an employee." The record in Millsap was found by the Tax Court not to contain any evidence to suggest that the taxpayer in that case "was significantly motivated in making the advances he did in order to protect his position as a salaried officer [of his corporation]", or that the loans in question were necessary to keep the company in business.

The Court is satisfied, under the stipulated facts of this case, that the payments made by plaintiffs on their guarantees of the corporate promissory notes of Rider and General, constituted business bad debts under 26 U.S.C.A. § 165 (c) (1) which were incurred in plaintiffs' trade or business. Under the circumstances, plaintiffs were entitled to deduct the full amount thereof in their 1959 income tax return.

There is no merit to defendant's contention that the losses sustained by plaintiffs constituted contributions to capital of Rider and General. This argument is based on the fact that General was thinly capitalized. But thin capitalization alone is not enough to cause courts to treat debts as equity. Rowan v. United States, 219 F.2d 51 (5 Cir. 1955). The question is one of fact, and the totality of circumstances in each case must be considered before determining whether advances are debt or equity. Diamond Bros. Company v. C. I. R., 322 F.2d 725 (3 Cir. 1963); Lundgren v. C. I. R., 376 F.2d 623 (9 Cir. 1967).

As appears from the stipulated facts, Rider was a going concern when plaintiffs acquired an interest in it in 1938. Rider continued as a viable business until the reorganization proceedings in 1957. Plaintiffs were instrumental in the formation of General in 1950. General commenced operations by borrowing $50,000.00 from Rider. The latter had to borrow that money from certain individuals who would not make the loan to General because it had no assets. This initial loan may or may not have been a contribution to Gen-

eral's capital. But that initial loan is not involved in this case. Plaintiffs are claiming losses only with respect to the $17,088.00 paid to the holders of the guaranteed corporate notes in 1959. In determining whether advances qualify as debt, later advances can be separated from the initial investment. See Huffstutler v. Commissioner, 12 TCM 1422 (1953).

It has been noted that after General commenced operations with its initial capitalization, the need for additional financing arose. Plaintiff Benjamin A. Stratmore, being the officer charged with the duty of securing financing for both Rider and General, induced certain individuals, who were in no way connected with either corporation, to lend them funds for their business operations. However, the needed funds were not obtainable without plaintiffs' guarantee. In connection ·with the plan approved under the Chapter XI proceedings, creditors received 25% of the obligations due them. Those certain creditors who held Rider and General notes indorsed by plaintiffs then sought payment of the balance due on said notes through enforcement of the guarantees. These creditors and plaintiffs entered into settlement agreements whereby the creditors accepted less than full payment and required plaintiffs not to file any claims against Rider and General in the bankruptcy proceedings.

The loans made to Rider and General on the guaranteed notes were fixed in amount, interest bearing, and were payable whether the corporate makers thereof operated profitably or at a loss. The holders of such notes had the right to share with general creditors in the event of insolvency of the corporations. Thus, the debts in question substantially meet the tests laid down in John Wanamaker Philadelphia v. Commissioner of Internal Revenue, 139 F.2d 644 (3 Cir. 1943), for determining whether advances are debts or equity. The stipulated facts clearly support the inference that the loans here involved were treated as debts by the creditors and the guarantors. The facts of this case do not support defendant's contention that plaintiffs' losses constituted contributions to capital of the corporations. The Court concludes, for the reasons stated herein, that plaintiffs have suffered a business bad debt of $17,088.00, which is fully deductible in their 1959 income tax return.

This opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Counsel for plaintiffs, on notice to counsel for defendant, will please submit an appropriate order.