269 F.2d 50
 78 A.L.R.2d 993
 John Michael RUDITIS, a Minor, Formerly Known as John
Michael Lichaczewski, by C. G. Lindquist, His
Guardian Ad Litem, Appellant,
v.
Sammy P. GALLOP and Pearl Gallop, Co-Partners Doing Business
as Karsbar Bar and Grill, and Zelda Inn Grill,
Inc., a Corporation, Appellees.
 No. 16106.
 United States Court of Appeals Eighth Circuit.
 July 22, 1959.
 
 Rodney J. Edwards, Duluth, Minn. (Thos. L. Hunt and Hoag, Gruber & Edwards, Duluth, Minn., on the brief), for appellant.
 K. C. Weyl, Duluth, Minn. (R. B. Reavill, Duluth, Minn., on the brief), for appellees.
 Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.
 JOHNSEN, Circuit Judge.
 
 
 1
 Appellant, an infant and a citizen of Michigan, sued in Minnesota, through his guardian ad litem, to recover $250,000 in damages from the owners of two liquor bars in the City of Duluth, for the loss of support occasioned to him by the death of his mother. The court entered a summary judgment in favor of the liquor dealers.
 
 
 2
 The action was one based on the Civil Damage Act of Minnesota, M.S.A. 340.95, which provides: 'Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or his parent, guardian, or next friend, as the court directs; and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof'.
 
 
 3
 The complaint alleged that the death of appellant's mother occurred from an automobile accident in Minnesota; that she was at the time a passenger in a car driven by one James C. Fedo; that the accident was due to Fedo being intoxicated; that his intoxication was caused by liquor having been sold and served to him at the establishments of appellees; that Fedo was then only 20 years old and the sales of liquor to him were therefore illegal, under the statutes of Minnesota and the ordinances of Duluth prohibiting the sale of intoxicating liquor to minors; and that the death of appellant's mother had caused him to be deprived of support from his only remaining parent, his father having died a number of years before.
 
 
 4
 Appellees set up as one of their defenses and moved for summary judgment on the basis of some releases, which had been executed by appellant's guardian and by the special administrator of the mother's estate, in a settlement of $3,000 for the mother's death, made by Fedo, his father as owner of the car, and the liability-insurance carrier on the automobile, under orders of approval and authorization from the Probate Court of the County in Michigan where appellant and his mother resided.
 
 
 5
 The separate release executed by the special administrator was without materiality in the situation, for it was one authorized by the Probate Court to be given on behalf of the mother's estate, covering such claims as the special administrator might have 'because of any damages sustained by said Deceased, because of, or arising out of the accident and death aforesaid'. The cause of action created by the Civil Damage Act, for appellant's loss of support from his mother's death occasioned by the illegal sale of liquor to Fedo, was one that in no way ran to her estate or to her personal representative, but to appellant personally, and so constituted a right which the special administrator of the mother's estate would have no capacity to release.
 
 
 6
 As to the release given by appellant's guardian, this was one authorized by the Probate Court to be executed by the guardian for a payment of $3,000, in compromise and settlement of an alleged dispute with Fedo, his father, and their insurance carrier over whether the accident and death, with the damage resulting therefrom, were due solely to Fedo's negligence, and with a discharge to be made of Fedo, his father and the insurance carrier from any and all claims which appellant or the guardian might have against these three parties 'because of or arising out of the accident and death aforesaid'.
 
 
 7
 The release form, however, which the insurance carrier took from the guardian went beyond the authorization granted by the Probate Court's order and purported to make release, not simply of Fedo, his father and their insurance carrier, but also of 'all other persons, firms or corporations' from any claims which appellant or the guardian might have 'because of said accident and death'.
 
 
 8
 Under Michigan law, a guardian is without capacity to compromise and settle claims except under orders of the Probate Court. Michigan Compiled Laws of 1948, 708.19, provides: 'Any fiduciary, under order of the probate judge, * * * may adjust, settle or compromise any claim for or against the estate of a decedent or ward'. Such authorization by the court is not simply permissive but the order is 'in effect, a judgment'. McMann v. General Acc. Assur. Corporation, 276 Mich. 108, 267 N.W. 601, 602; Heap v. Heap, 258 Mich. 250, 242 N.W. 252. Thus, a settlement made by a guardian is valid only to the extent that it is within the scope of the court's authorizing order.
 
 
 9
 Here, under the court's order, there was authorization only for the release or discharge of liability as to Fedo, his father and their insurance carrier. Insofar as a use of the words 'all other persons, firms or corporations' could add any significance or effect to a release, this language would here have to be regarded as going beyond the extent of the guardian's authorization and so be required to be ignored.
 
 
 10
 The settlement authorized to be made with the Fedos and their insurer was of the right of action and liability existing for the mother's death under the Wrongful Death Act of Minnesota, M.S.A. 573.02, from Fedo's alleged negligence. The right of action here sued upon was that created by the Civil Damage Act, which liability the Minnesota Supreme Court has held to be penal in nature and 'wholly unrelated as to scope and purpose' with that under the Wrongful Death Act. Ritter v. Village of Appleton, Minn., 93 N.W.2d 683, 688, and cases cited therein.
 
 
 11
 Appellant's loss of support, which represented the basis of the damages sought to be recovered by him, had however constituted an element of settlement and release in relation to the compromise authorized as to the Wrongful Death Act.
 
 
 12
 Because of this fact, the trial court was of the view that the settlement was in legal effect an acceptance by appellant and his guardian of 'a payment in full satisfaction of his injury' from his mother's death.
 
 
 13
 The court drew a distinction between the effect of a judment recovered in a suit under the Wrongful Death Act and the effect of a release given in compromise and settlement of such damage rights as could exist under that statute. It said in its memorandum opinion that, if appellant had sued and recovered a judgment under the Wrongful Death Act and the amount thereof was not in fact full compensation for his loss, 'he could now recover in this action such (additional) damages as would make him Whole'. As to a settlement, however, made of a Wrongful Death Act claim involving loss-of-support injury, the court regarded the giving of a general release for the Wrongful Death Act liability, with no reservation or other indication in the instrument that the payment was not being accepted as full satisfaction or compensation for such injury, as having the effect as a matter of law of constituting full satisfaction or compensation for the injury.
 
 
 14
 The case of Ritter v. Village of Appleton, Minn., 93 N.W.2d 683, supra, decided by the Minnesota Supreme Court since the trial court's judgment herein was rendered, makes clear, we think, that no such distinction exists between the effect of a judgment and that of a settlement in respect to a Wrongful Death Act payment. An action for damages against a liquor dealer under the Civil Damage Act of that State is no more barred by a release made of third-party liability under the Wrongful Death Act on compromise and settlement than by the recovery of a judgment under that Act; and it is as much open to being shown in the one situation as in the other that the sum received does not in fact amount to full compensation for the loss sustained.
 
 
 15
 In the Ritter case, there had been a suit instituted under the Wrongful Death Act but the matter was compromised and settled without trial and judgment, but with a release taken, and this, as here, was urged as a bar to a suit under the Civil Damage Act. The Minnesota Supreme Court said: 'Defendant here (the liquor dealer) is not a joint tortfeasor with the driver of either automobile. Its wrong is distinct from theirs and gives rise to a separate action. The releases delivered in the wrongful death action were based upon a compromise and settlement therein in which the issues of negligence and contributory negligence, as well as the financial responsibility of defendants therein, may have played an important part. They were limited to liabilities arising out of the (tortious) actions of (the automobile drivers). * * * The releases did not extend to any one except defendants and the insurer of defendant Hanson. It is clear that such releases did not constitute a bar to the present proceedings which involve entirely distinct issues and parties'. 93 N.W.2d at pages 688 and 689.
 
 
 16
 The court reiterated in a footnote on page 689 of 93 N.W.2d: 'Here, as indicated in Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365, there are two separate actions differing in scope and purpose, and involving different issues and wrongdoers who are not joint or concurrent tortfeasers. Accordingly, a release in the one action would not mean necessarily that full compensation had been received for the loss sustained so as to absolve the wrongdoer in the second action'.
 
 
 17
 The opinion went on to emphasize that, of course, a party would not be entitled to double compensation 'for the same losses'. But it said that all that a defendant under the Civil Damage Act had the right to have done in this respect would be 'to have the sums paid (under a Wrongful Death Act recovery or settlement) applied against plaintiffs' recovery against it, but it would be responsible for any excess remaining after such application'. 93 N.W.2d at page 689.
 
 
 18
 The judgment must accordingly be reversed and the cause remanded for further proceedings.
 
 
 19
 It should be added perhaps that the case has been submitted, both in the trial court and here, on the theory and basis that the effect of the release, as related to appellant's rights under the Civil Damage Act, is a matter of Minnesota general law. No conflicts of law question as to the effect of the release under Michigan law and the possible significance thereof is accordingly here involved.
 
 
 20
 Reversed and remanded.