OPINION OF THE COURT
 

 WEIS, Circuit Judge.
 

 The Tax Court determined the taxpayers were not entitled to deduct interest which they had paid as guarantors on notes of corporations that had been discharged in bankruptcy. We conclude that because the taxpayers had a direct and fixed obligation to pay the notes and had no recourse • against the corporations, the interest is properly deductible under the Internal Revenue Code. Accordingly, we will reverse the decision of the Tax Court.
 

 After a remand from this court,
 
 B.B. Rider Corp. v. Commissioner,
 
 725 F.2d 945 (3d Cir.1984), the Tax Court reaffirmed its prior ruling that interest payments made by the Stratmores were not deductible under § 163 of the Internal Revenue Code. 26 U.S.C. § 163 (1982). They have appealed.
 

 The taxpayers were officers and stockholders in B.B. Rider Corporation and General Manufacturing Corporation, and were guarantors for certain debts incurred by those companies. In 1957, both entities filed for reorganization in bankruptcy under Chapter XI. As part of the plan for reorganization, Rider and General paid their creditors 25 cents on the dollar. The taxpayers agreed to honor their obligations as guarantors of the remaining 75 percent due on certain notes, and also stipulated they would forego their claims against the companies. In addition, the taxpayers assented to a limitation on their salaries.
 
 *420
 
 The plan was approved by the bankruptcy referee.
 

 Thereafter, the taxpayers made payments to the holders of the notes and deducted those amounts as interest and bad debts. In the initial appeal, we decided that the Tax Court properly treated payments on principal as non-business bad debts. We did not rule on the interest deduction because the Tax Court had not discussed the applicability of the holding in
 
 Tolzman v. Commissioner,
 
 43 T.C.M. 1 (CCH) (1981). In that memorandum opinion, the court concluded that guarantors had become primarily liable after the insolvency of a corporate debtor and were thus entitled to deduct interest under § 163. To afford the Tax Court an opportunity to address
 
 Tolzman
 
 in the first instance, we remanded the interest question.
 

 On reconsideration, the Tax Court distinguished
 
 Tolzman
 
 by noting that there the interest was deductible because it had accrued on a state court judgment entered after litigation on a contract of guaranty. Consequently, the interest was part of a court decree for which the guarantors were directly and primarily liable, not on the original debt obligation. 48 T.C.M. at 1371.
 

 In contrast, the Stratmores’ payments of interest were found to be non-deductible because they arose from secondary obligations. Commenting that
 
 Tolzman
 
 is a memorandum opinion and as such is not controlling precedent, the Tax Court reaffirmed its earlier ruling to disallow the interest deductions under § 163.
 

 On appeal, the taxpayers contend that they became primarily liable after the bankruptcy proceeding, which discharged the corporations of liability on the notes. The government maintains that despite the bankruptcy, the taxpayers as guarantors remained only secondarily liable. The government concedes that even though the taxpayers are not permitted to deduct the interest under § 163, they may be entitled to a full or partial deduction for the interest under § 166 as a bad debt loss.
 

 Under § 163(a) of the Internal Revenue Code, a taxpayer is “allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.” Although this is a very broad provision, it was determined early in the history of the Code that the debt must be the taxpayer’s direct obligation. A Treasury regulation, § 1.163-1, made an exception by permitting a deduction for interest paid on a realty mortgage even when the taxpayer was not directly liable on the bond or note secured by the property.
 
 [1]
 

 Observing that just one exception has been created by regulation, some courts beginning with
 
 Guardian Investment Corp. v. Phinney,
 
 253 F.2d 326, 332 (5th Cir.1958) have interpreted § 163 as allowing a taxpayer to deduct interest only on an obligation for which he was primarily liable at its inception. The rationale is that because the regulation created a mortgage exception, all others were thereby excluded.
 

 The Mertens’ commentary states that if the “indebtedness represents a direct obligation
 
 of the taxpayer,
 
 the interest properly due thereon is clearly deductible. But if the doctrine is not pushed too far, such interest is also deductible by a person under an equitable [duty] to pay it as having received, in substance, the benefit of the indebtedness.” 4A Mertens,
 
 Law of Federal Taxation,
 
 § 26.03 (1985). As this passage and the court decisions point out, interest paid for another is generally not deductible. However, “somewhere between a strict requirement of direct liability and the obvious insufficiency of payments clearly on behalf of another person, the line must be drawn.” Determining who is entitled to claim interest under § 163 often has been difficult because there is no general, all-inclusive rule and
 
 *421
 
 because of a tendency to require direct liability of all taxpayers.
 
 Id.
 

 In
 
 Nelson v. Commissioner,
 
 281 F.2d 1 (5th Cir.1960), the court of appeals held that payments of interest on corporate indebtedness by the controlling stockholder as guarantor were not deductible. The court reasoned that interest and principal constituted one obligation, which was a non-business loss subject to the ruling in
 
 Putnam v. Commissioner,
 
 852 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956). Moreover, the court stated that interest “is an incident of the principal and when accrued and payable is an indebtedness no different from that of the principal.” 281 F.2d at 5. This conclusion is flawed because the Internal Revenue Code makes a specific distinction between the deductibility of principal and interest payments.
 
 See
 
 26 U.S.C. §§ 163, 165, 166.
 

 The frequent reference in case law to
 
 Putnam
 
 requires some brief discussion. In that case, the taxpayer was the sole stockholder and guarantor of notes given by a corporation. Eighteen months after he liquidated the company’s assets, but while it still had a corporate existence, the taxpayer paid off the notes and claimed that amount in full as a loss on “a transaction entered into for profit.” The Court sustained the Commissioner’s determination that the loss was a nonbusiness bad debt that was partially deductible under § 166. In the course of its opinion, the Court discussed the relationship between a guarantor and the principal obligor commenting that “under the doctrine of subro-gation, payment by the guarantor ... is treated not as creating a new debt and extinguishing the original debt, but as preserving the original debt and merely substituting the guarantor for the creditor.”
 
 Id.
 
 at 88, 77 S.Ct. at 178.
 

 That language was used in resolving the question of when the debt became worthless for purposes of § 166, a matter having no comparable relevance under § 163. Nevertheless, the reference in the
 
 Putnam
 
 case has been cited in cases in which guarantors seek to deduct interest under § 163. It must be emphasized that
 
 Putnam
 
 in no way purported to address the deductibility of interest under § 163. The only claim made by the taxpayer and advanced in both the court of appeals and the Supreme Court was that the payment should be treated as a business loss. As the court of appeals opinion reveals, the taxpayer was a co-maker on the notes and was primarily liable on them along with the corporation.
 
 See Putnam v. Commissioner,
 
 224 F.2d 947, 949 (8th Cir.1955). The Supreme Court’s language in
 
 Putnam,
 
 therefore, should not be indiscriminately applied to interest deductions under § 163.
 

 Distinguishing between the
 
 Nelson
 
 and
 
 Putnam
 
 situations is important. As Mer-tens puts it “the deduction for interest differs from some other deductions, such as that for business expense, in that, aside from the express limitations contained in the Code, interest paid or accrued is deductible, whether it serves a business purpose or not.” Mertens, at § 26.01.
 

 In
 
 Abdalla v. Commissioner,
 
 647 F.2d 487 (5th Cir.1981), the court denied deductions for interest paid by a stockholder (a co-maker of a note) even though the payments were made after the corporate debt- or had been discharged in bankruptcy. The court of appeals referred to the Tax Court’s statement that although the taxpayer was primarily liable to the creditor, “he was secondarily liable vis-a-vis [the corporation].”
 
 Id.
 
 at 503. The Tax Court had cited
 
 Putnam,
 
 and concluded that because the taxpayer had a theoretical recourse against the corporation, the debt was not primary, but secondary. However, neither the Tax Court nor the court of appeals discussed the effect of the corporation’s bankruptcy.
 

 The Tax Court, in
 
 Hamrick v. Commissioner,
 
 40 T.C.M. 276 (1980), disallowed a deduction for interest paid by stockholder-guarantors after default on notes by the company. Although the debtor was in financial difficulty it had not filed-in bank
 
 *422
 
 ruptcy. A similar ruling was issued in
 
 Rushing v. Commissioner,
 
 58 T.C. 996 (1972), which relied on
 
 Nelson’s
 
 interpretation of
 
 Putnam.
 

 Byram v. United States,
 
 705 F.2d 1418, 1426 (5th Cir.1983), followed the Fifth Circuit’s precedent in
 
 Nelson
 
 and
 
 Abdalla,
 
 stating that “the loan was made to the corporation, not to [the taxpayer].” To the same effect,
 
 see Golder v. Commissioner,
 
 604 F.2d 34 (9th Cir.1979), where the court cited
 
 Nelson
 
 and
 
 Rushing
 
 in a case not involving a bankruptcy.
 

 These decisions may be fairly summarized as holding that if the debt when originally incurred was that of the primary obli-gor, it will remain such even if at a later time the guarantor becomes directly liable to the creditor. The courts reached that conclusion on the inapposite theory that the guarantor has a theoretical right of recovery from the primary debtor. Those cases put aside the fact that after default the guarantor becomes legally obligated to pay interest when due.
 

 In
 
 Arrigoni v. Commissioner,
 
 73 T.C. 792 (1980), the taxpayer-stockholder was permitted to deduct interest paid on state taxes owed by a solely-owned corporation. The court noted that by its terms the state statute made the taxpayer jointly and severally liable with the company. No mention was made of the somewhat inconsistent holding by the Tax Court in
 
 Abdalla
 
 where the direct liability of the taxpayer was overlooked.
 
 Arrigoni
 
 reasoned that it had not been demonstrated that the taxpayer could obtain reimbursement from the company under the taxing statutes. The court did not discuss the possibilities of recovery under common law or restitution-ary theories.
 

 In
 
 Tolzman
 
 the taxpayer was an officer, director, and stockholder of the corporation. Before the company became insolvent, the taxpayer executed a guaranty agreement in favor of the bank, which had loaned money to the company. After insolvency, the taxpayer became involved in litigation with a party who had succeeded to a coguarantor’s rights. As a result of a state court judgment in that litigation, the taxpayer became liable for the balance of the principal on the note and for interest, which had accrued after the insolvency.
 
 [2]
 
 In finding the interest deductible, the Tax Court said that after the corporation became unable to pay, the taxpayers “as guarantors were directly and primarily liable for the repayment of the notes under the contract of guaranty.” 43 T.C.M. at 7. “Therefore, there [was] no question that the interest accrued ... at a time when [the taxpayers’] liability was primary and direct.”
 

 With that brief survey of the applicable law, we come to the critical issue in this case. We observe once again that the only question before us is the deductibility of interest. It is important to recognize that the interest which taxpayers claim accrued and was paid beginning in 1966, eight years after the bankruptcy proceedings ended.
 
 [3]
 

 We have serious reservations about
 
 Nelson
 
 and
 
 Rushing
 
 and their reasoning that the status of the indebtedness is deter
 
 *423
 
 mined at the time the debt was originally incurred. It appears far more realistic, and in keeping with the language and purpose of § 163, to look to the liability of the taxpayer at the time the interest was paid. If at that time there is a fixed, non-contingent, legal obligation to pay and reimbursement is barred by bankruptcy, then the taxpayer should be entitled to deduct interest under § 163. The debt at that point is no different in legal effect from any other whose interest payments are included within § 163.
 

 Application of the
 
 Putnam
 
 reasoning as it construed the bad debt section of the Code is inconsistent with the completely different language and concerns of the interest deduction portions of § 163. However, since
 
 Nelson
 
 and its questionable reading of
 
 Putnam
 
 are easily distinguishable, we may confine our holding to the narrow fact situation presented when the original obligor has been discharged in bankruptcy. When that occurred here, not only did the companies become unable to pay the notes but in addition, by operation of law, the taxpayer-guarantors became unable to secure reimbursement.
 

 Section 371 of the Bankruptcy Act, in effect in 1958, provided that the “confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement or the order confirming the arrangement” except as otherwise provided in the order or arrangement or as specified in the statute.
 
 [4]
 
 No exceptions to the discharge are asserted or applicable here.
 

 In discussing bankruptcy under Chapter XI, Collier states that “the discharge results by operation of law from the confirmation of the plan, rather than by virtue of the contract of composition between the debtor and his creditors.” 9
 
 Collier on Bankruptcy
 
 ¶ 9.32, § 371[1] (14th ed. 1978). The import of a discharge is conveyed by the former Official Form 11-F18 which contained a paragraph stating, “all creditors whose debts are discharged by this order ... are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the ... debtor.”
 
 Id.
 
 Collier, ¶ 9.32[7.1] at 422.
 

 If a guarantor wishes to make a claim against the principal debtor, that must be done before the discharge in bankruptcy is entered. If payment to a creditor is made by a surety after the debtor’s discharge, reimbursement is barred.
 
 Williams v. United States Fidelity & Guaranty Co.,
 
 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).
 
 See also
 
 1A Collier on Bankruptcy ¶116.05 (14th ed. 1978).
 

 Unlike an ordinary composition of debts under general contract law, the release of the principal in bankruptcy does not release a surety. 11 U.S.C. § 34 (in effect in 1958). Section 34 of the Bankruptcy Act provided that “the liability of a person who is a guarantor ... for a bankrupt shall not be altered by the discharge of such bankrupt.”
 

 The government construes this statutory provision to mean that discharge will not affect secondary liability, and therefore the
 
 Nelson
 
 rule still applies. That argument misinterprets the intent of § 34 which is to prevent the guarantor from escaping responsibility on his formerly contingent obligation to the creditor. That provision makes clear that the discharge in bankruptcy does not shield the guarantor from direct liability to the creditor.
 

 The subrogation theory that led to the
 
 Nelson
 
 ruling has no practical application to the situation here. Because of the discharge in bankruptcy, the companies have a complete defense to any legal or equitable action for reimbursement, and the obligation for the debt became solely that of the taxpayers.
 

 
 *424
 
 One other point remains for comment. As Mertens mentions, to be deductible, the interest must be for the benefit of the taxpayer, not someone else. That condition is satisfied here.
 

 Interest is payment to the creditor as compensation for the use of the principal over a period of time. In the case at hand, the taxpayers owed the creditors the principal sum beginning at the latest when the companies were discharged in bankruptcy in 1958. If the taxpayers had paid the creditors then no further interest would have accrued. The amount that accrued after that time benefited the taxpayers in the sense that they did not remit the principal sum immediately, but rather were permitted to pay over a number of years. The interest that accumulated during this period benefited the guarantors and for that reason should be deductible by them.
 

 Again, with respect to the substance of the transaction, if the taxpayers had borrowed the money from a bank and used it to pay the creditors in 1958, the taxpayers certainly would have been entitled to deduct the interest on the bank loan. Therefore, our conclusion that the interest is deductible after bankruptcy is consonant with a realistic assessment of the economics of the situation.
 

 We conclude, therefore, that interest which accrues, and is paid after a corporate debtor’s discharge in bankruptcy is deductible by the guarantors under § 163. Accordingly, the judgment of the Tax Court will be reversed.
 

 [1]
 

 . That proviso would cover the situation where an individual assumed payment of an existing mortgage on property which he purchased, although he did not become liable on the bond or note.
 

 [2]
 

 . The opinion does not disclose who paid the interest up to the point when it was paid by the taxpayer, and in any event that amount was not before the court.
 

 [3]
 

 . In its opinion, the Tax Court said the bankruptcy proceedings were "terminated." However, in earlier litigation on a related point involving the same parties, a district court found that the “Chapter XI proceedings and the plaintiffs’ [Stratmores'] settlement on their guarantees resulted in a full discharge of Rider and General.”
 
 Stratmore v. United States,
 
 292 F.Supp. 59, 61 (D.N.J.1968). On appeal, we stated, "The corporations were discharged from bankruptcy in December 1958."
 
 Stratmore v. United States,
 
 420 F.2d 461, 462 (3d Cir.1970). Although the order of the bankruptcy referee is not in the record, on this appeal and in a previous one the taxpayers have contended, and the government has not disputed, that the debts were discharged. We therefore assume that the order of the bankruptcy court approving the reorganization discharged the companies of the underlying debt.
 
 See
 
 9 Collier on Bankruptcy ¶ 9.32, § 371[1] (14th ed. 1978).
 

 [4]
 

 . That the taxpayers guaranteed the notes does not make them secured debts under the Bankruptcy Act.