Janice M. CLELAND, formerly Janice M. Godber, as Executrix of the Estate of Merlyn C. Godber, deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 88–5213.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1989.

Decided May 8, 1989.

Jeffrey L. Viken, Rapid City, S.D., for appellant.

Gary Allen, for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

LAY, Chief Judge.

Janice M. Cleland, executrix of her first husband's estate, appeals from a judgment of the district court dismissing her wrongful death suit against the United States. The decedent, Merlyn C. Godber, died February 13, 1980, in an airplane crash near Hot Springs, South Dakota, when flying as a passenger in a plane piloted by Charles M. Largent, III. The airplane was owned by Fall River Feedlots, Inc. (Feedlots).

Cleland, serving as executrix, filed an administrative claim against the FAA under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982 & Supp. IV 1986). This claim was denied on September 4, 1984. She subsequently settled the claim against Largent's estate and Feedlots. In that settlement, she received $325,000 which was distributed to her and her three adult children. The government asserts that she executed a general release which compromised all claims against any and all parties arising out of the plane crash. The government claims this bars further litigation in her suit against the United States. The district court granted summary judgment for the government on this basis and Cleland now appeals. We reverse and remand the case to the district court for further proceedings.

Several months after the administrative claim had been denied, Cleland filed suit against the United States asserting that the FAA had been negligent in failing to properly warn the pilot of bad weather conditions. She alleged that the failure to warn was a contributing factor in the proximate cause of the plane crash. The personal representatives of Largent and another passenger, Altringer, have previously litigated this issue before this court. *See Norwest Capital Management & Trust Co. v. United States*, 828 F.2d 1330 (8th Cir.1987), *on remand, Largent v. United States*, No. 83–5020 (D. S.D. Mar. 30, 1988).[1]

While the *Norwest* appeal was pending, the government and the executrix stipulated that they would be bound by the results of the appellate decision as to the findings of the government's negligence and proximate cause. Due to the stipulation, discovery was suspended on those issues.

On March 15, 1988, the United States moved to amend its answer to plead Cleland's November 5, 1984, release as an

---

1. On initial remand the district court awarded damages of one million dollars in favor of Altringer's estate against the government. This was not appealed. The government appealed a similar award of damages in favor of the pilot's estate. This case has been recently remanded for further proceedings. *See Largent v. United States*, 873 F.2d 1448 (8th Cir.1989).

affirmative defense to its liability. Then, on March 22, 1988, the government moved for summary judgment, claiming that Cleland's release was framed in language which constituted a general release. The government asserted that Cleland had released not only Largent's estate and Feedlots, but also

> all persons, firms, corporations, administrators, and executors from each and every claim, demand, action or cause of action, either at law or in equity, of every kind and description, which [she], as Executrix, now [has] or hereafter may have arising out of an accident on the 13th day of February, 1980, in Fall River County, South Dakota, as a result of the operation of an airplane owned by Charles Marcus Largent, III and operated by him for and on behalf of Fall River Feedlots, Inc.

Record at 71.

Cleland responded by filing a cross motion for partial summary judgment on the issue of the United States' liability to her, as Godber's executrix. On May 6, 1988, a hearing was held on the motions before the district court.[2] The district court granted the United States' motions to amend and for summary judgment, and dismissed Cleland's complaint. This appeal followed.

The government asserts that the language of the release discharges any other potential defendants including the United States. The executrix argues that the release was not intended to compromise her claim against the government and that the wording of the release manifests a clear expression of releasing only Feedlots and the Largent estate. She argues that under the South Dakota Uniform Contribution Among Joint Tortfeasors Act, S.D.Codified Laws Ann. § 15–8–17 (1984 & Supp.1988) that no other tortfeasors are to be released "unless the release so provides * * *."

■ This court reviewed a similar claim in *Douglas v. United States Tobacco Co.,* 670 F.2d 791 (8th Cir.1982). There, the district court found that the operative language of the release discharging "all other persons, firms, corporations, associations or partnerships" constituted a release of all others under Arkansas law. This court agreed and barred plaintiff's claims against other joint tortfeasors. 670 F.2d at 795. Our holding in *Douglas* requires us to hold that the language of Cleland's release operates as a general release.

Therefore, under the terms of the release in issue, unless the release is held otherwise invalid, further claims against other joint tortfeasors are deemed barred.

The executrix asserts that she lacked authority under South Dakota law to release any party other than Largent and Feedlots. Under section 21–5–6 of the South Dakota statutes, unless all beneficiaries execute the release, a personal representative of an estate must seek approval of the appointing court for a wrongful death settlement. This statute reads:

> Such personal representative may at any time before or after the commencement of a suit for wrongful death settle with the defendant the amount to be paid to him as damages for the wrongful death of the decedent. If such personal representative was appointed in this state and settlement is made before the commencement of a suit such settlement must have the approval of the court of the representative's appointment. If settlement is made at any time after the commencement of suit, whether before or after judgment therein, such settlement must have the consent and approval of the court wherein the action is pending; provided, however, that if the personal representative was appointed in this state he may make such settlement upon the consent and approval of either the court wherein the action is pending or the court of his appointment. If all the statutory beneficiaries are of full age and competent and consent in writing to the proposed settlement the same may be made at any time, before or after suit, without the consent of either court.

---

**2.** The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

S.D.Codified Laws Ann. § 21–5–6 (1987 & Supp.1988).

The November 1, 1983, application to the court was executed not only by the executrix, but by the three adult beneficiaries (the decedent's children).[3] These four petitioned to confirm a settlement with the following language: "the estate of the above named decedent has a cause of action against Bobbie Fae Largent, Executrix of the estate of Charles Marcus Largent, III, deceased, and Fall River Feedlots, Inc. * * *." Record at 66. The petition went on to request an order authorizing the executrix's settlement and "release [of] Bobbie Fae Largent, Executrix of the estate * * * and Fall River Feedlots, Inc., releasing *them* from all causes of actions, claims, and demands arising out of said wrongful death." *Id.* at 67 (emphasis added).

In the judgment approving and confirming the settlement dated November 2, 1984, the court authorized the settlement and gave judicial approval to the executrix to "release * * * any and all claims which might be asserted against the said Bobbie Fae Largent, Executrix of the estate of Charles Marcus Largent, III, deceased, and Fall River Feedlots, Inc. * * *." Record at 70. In the same decree, the court recited:

the settlement made by the Executrix of the estate of Merlyn C. Godber, deceased with the defendants, Bobbie Fae Largent, Executrix of the estate of Charles Marcus Largent, III, deceased, and Fall River Feedlots, Inc., for any and all claims, both known and unknown arising out of the death of said decedent, [is hereby] approved, confirmed and allowed.

Record at 69.

Thus, it is clear that the petition for the court's approval for settlement specified only Largent's estate and Feedlots. Similarly, the judgment authorizing and approving the settlement is not all inclusive of other parties as is the language of the release executed by the executrix.[4]

Under South Dakota law there is no question that an executrix, representing the estate and its beneficiaries, acts in a fiduciary capacity. In South Dakota it is well established that the executrix is an officer of the court which appoints her. She is thus subject to its control and direction. It is likewise clear that the powers of a personal representative are generally those imposed by statute. In addition to section 21–5–6, *see, e.g.,* S.D.Codified Laws Ann. ch. 30–18 (1984 & Supp.1988) (management of decedents' estates); S.D. Codified Laws Ann. § 30–18A–1 (1984 & Supp.1988) (hearing and court approval required for independent administration of estate by administrator); S.D.Codified Laws Ann. § 30–22–1 (1984 & Supp.1988) (court order required to sell estate property unless will directs otherwise); S.D.Codified Laws Ann. § 30–22–7 (1984 & Supp.1988) (court order otherwise required for sale of property); S.D.Codified Laws Ann. § 30–22–9 (1984 & Supp.1988) (sale of estate property must be justified by petition for order of sale of property). The state of South Dakota has patently sought to provide judicial process for the protection of estates and their beneficiaries. *Accord Coe v. Covert,* 214 Neb. 140, 144, 332 N.W.2d 699, 701 (Neb.1983) (construing South Dakota law).

Under section 21–5–6, the personal representative's authority to compromise a claim exists only by statutory grant. This court has previously encountered a case with a very similar factual scenario. That case dealt with the settlement of an infant's claim by his guardian. In *Ruditis v. Gal-*

---

**3.** Two petitions dated November 1, 1984, were presented together to the court. One, entitled "Petition and Order for Distribution" was signed by all four beneficiaries. Record at 107–110. This instrument recited: "[t]hat settlement of the wrongful death claim * * * has been made as more fully appears in the attached judgment approving and confirming settlement." Record at 107. This petition requested approval of the beneficiaries' proposed distribution of the settlement. The other instrument, entitled "Petition"

was signed only by Cleland, acting as executrix. It is this second document which sought judicial approval of the settlement itself and which is quoted in the text of the opinion. *See* Record at 66–67.

**4.** We note that only the executrix signed the release. It was not executed by any of the other statutory beneficiaries.

*lop,* 269 F.2d 50 (8th Cir.1959), speaking through the highly respected jurist Judge Harvey Johnsen, the court observed:

As to the release given by appellant's guardian, this was one authorized by the Probate Court to be executed by the guardian for a payment of $3,000 in compromise and settlement of an alleged dispute with Fedo, his father, and their insurance carrier over whether the accident and death, with the damage resulting therefrom, were due solely to Fedo's negligence, and with a discharge to be made of Fedo, his father and the insurance carrier from any and all claims which appellant or the guardian might have against these three parties "because of or arising out of the accident and death aforesaid".

The release form, however, which the insurance carrier took from the guardian went beyond the authorization granted by the Probate Court's order and purported to make release, not simply of Fedo, his father and their insurance carrier, but also of "all other persons, firms or corporations" from any claims which appellant or the guardian might have "because of said accident and death".

Under Michigan law, a guardian is without capacity to compromise and settle claims except under orders of the Probate Court. Michigan Compiled Laws of 1948, § 708.19, provides: "Any fiduciary under order of the probate judge, * * * may adjust, settle or compromise any claim for or against the estate of a decedent or ward". Such authorization by the court is not simply permissive but the order is "in effect, a judgment". *McMann v. General Acc. Assur. Corporation,* 276 Mich. 108, 267 N.W. 601, 602; *Heap v. Heap,* 258 Mich. 250, 242 N.W. 252. Thus, a settlement made by a guardian is valid only to the extent that it is within the scope of the court's authorizing order.

Here, under the court's order, there was authorization only for the release or discharge of liability as to Fedo, his father and their insurance carrier. Insofar as a use of the words "all other persons,

firms or corporations" could add any significance or effect to a release, this language would here have to be regarded as going beyond the extent of the guardian's authorization and so be required to be ignored.

269 F.2d at 52–53. Although the case dealt with Michigan law, we find its reasoning germane. Courts in other jurisdictions have reached the same result. *See, e.g. Caputo v. Holt,* 217 Va. 302, 305, 228 S.E. 2d 134, 137 (1976) (absent court approval acquired in manner provided by law, release executed by first personal representative was not binding upon either successor personal representative or statutory beneficiaries). We find this rationale applicable in the instant case.

■ Although the South Dakota Supreme Court has not passed directly upon this same factual situation, that court has held in an analogous statutory situation that without court approval a personal representative of an estate has limited authority to act. In *Shearn v. Fenton,* 74 S.D. 355, 52 N.W.2d 830 (1952), the South Dakota Supreme Court was asked to determine the validity of an executor's assignment of a judgment belonging to an estate. The applicable statute required that no sale of any property of an estate was valid unless approved by the county court. 74 S.D. at 356; 52 N.W.2d at 830. There, the executor had assigned the judgment to another, without first obtaining court approval. The assignee brought an action to recover the judgment, and the trial court dismissed the action on the basis that the assignment to the plaintiff was invalid. The Supreme Court of South Dakota affirmed, saying that the judicial approval mandated by the statute was clear, and it applied to personal property as well as to realty. *Id.* The court added: " 'Under the statute the representative of an estate has no authority to transfer property of a decedent, without authority of the probate court.' " *Shearn,* 74 S.D. at 357, 52 N.W.2d at 831 (quoting *Bovard v. Dickenson,* 131 Cal. 162, 63 P. 162 (1900)). The court found that "the judgment was property of the estate * * *." As such, it was subject to the

statute's mandate, and no title could pass without court approval. 74 S.D. at 358, 52 N.W.2d at 831. We find that these decisions direct a result contrary to the government's position. When the estate's representative has invoked the judicial approval mechanism, the validity of the settlement terms depends upon the court's approval. That which the judge has confirmed is valid; that which has not been confirmed is invalid.

■ The record we must review is that which was before the probate court. It thus follows in this case that Cleland's release is valid only as to those parties enumerated in the documents which were approved by the South Dakota circuit court. An executrix acts in a fiduciary capacity and may do only that which the probate court authorizes. Here, the court authorized Cleland's release *only* of Largent's estate and Feedlots. Cleland's release of any other parties was thus unauthorized and is invalid.

Additionally, Cleland had no authorization from the other beneficiaries to release any of the estate's claims besides those against Largent's estate and Feedlots. Therefore, no argument can be made that Cleland's release was authorized either by the court or by all the statutory beneficiaries.[5]

On this basis we find the release was invalid to the extent that any other parties, including the United States would be released. It is clear the executrix lacked authority to effect such a release.[6]

---

**5.** It is obvious that petitioner did not seek to release any other parties. Cleland and the other parties knew they had claims pending against the United States, and did not seek to settle them.

**6.** Where issues of law exist and the parties have briefed and argued the issue on appeal and where refusing to determine the issue "injustice might otherwise result * * *" (*Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)), courts of appeals uniformly exercise their discretion to entertain the issue on appeal. *See Metropolitan Life Ins. Co. v. United States*, 874 F.2d 1234 (8th Cir.1989); *Sanders v. Clemco Indus.*, 823 F.2d 214 (8th Cir.1987), *appeal after remand*, 862 F.2d 161 (8th Cir.1988); *Struempler v. Bowen*, 822 F.2d 40 (8th Cir.1987); Parker v. Corrothers, 750 F.2d 653 (8th Cir.1984); *Wright v. Newman*, 735 F.2d 1073 (8th Cir.1984). *See also Culbertson v. Secretary of Health & Human Servs.*, 859 F.2d 319 (4th Cir.1988); *Quinn v. Robinson* 783 F.2d 776, 814 (9th Cir.) *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986); *Stewart v. Hall*, 770 F.2d 1267 (4th Cir.1985); *B.B. Rider Corp. v. Commissioner of Internal Revenue Serv.*, 725 F.2d 945 (3d Cir.1984), *appeal after remand sub nom. Stratmore v. Commissisoner of Internal Revenue Serv.*, 785 F.2d 419 (3d Cir.1986). *In re Howell*, 731 F.2d 624 (98th Cir.1984), *cert. denied sub nom. Howell v. State Bd. of Equalization of Cal.*, 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984). *Cf. Animal Protection Institute of America v. Hodel*, 860 F.2d 920 (9th Cir.1988); *Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138 (1st Cir.1986); *Martinez v. Mathews*, 544 F.2d 1233 (5th Cir.1976).

In *Parker v. Corrothers*, 750 F.2d 653 (8th Cir.1984) the district court neither inquired about nor addressed whether the state's parole board regulations had created a protectible liberty interest. Despite this, our court stated:

[W]e do not believe that the district court's failure to examine the regulation precludes our consideration of it. Although we are reluctant to decide on appeal an issue not reached below, *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), both parties at oral argument, and the government on brief, addressed the question of whether the regulation establishes a protected liberty interest in parole. This is primarily a legal question which we may address on appeal. *See Lucas v. Hodges*, 730 F.2d 1493, 1501 (D.C.Cir.1984).

*Parker*, 750 F.2d at 658.

Here, the government has confronted the issue on appeal and has not asserted that the issue was not addressed in the district court. The dissent raises the issue on its own. None of these parties has ever asserted the dissent's contention at oral argument or in the briefs. In *Warren v. City of Lincoln*, 864 F.2d 1436 (8th Cir.1989) (en banc), this court decided an issue of law which not only was not raised in the trial court but also was not raised or briefed on appeal. There was no fundamental miscarriage of justice involved in the case. The issue involved in *Warren* was a routine issue of probable cause in a damage suit under 42 U.S.C. § 1983. Yet a majority of this court (which included Judge Fagg) had no difficulty in entertaining the new issue raised by the author judge as being within the exercise of the court's discretion.

As indicated, in this case the government does not assert that this issue was waived because it was not presented to the district court. The issue is clearly one of law and without examining all the trial briefs and motions argued before the district court (which are not before us) this court has no knowledge regarding

Judgment is hereby reversed and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

FAGG, Circuit Judge, dissenting.

As an appellate court, we generally do not consider nonjurisdictional issues raised for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1016 (8th Cir. 1988); *United States ex rel. Shakopee Mdewakanton Sioux Community v. Pan Am. Management Co.,* 789 F.2d 632, 635–36 (8th Cir.1986). This is not an absolute rule, however, and it is subject to our "prudence and discretion." *Struempler v. Bowen,* 822 F.2d 40, 42 (8th Cir.1987). When the unraised issue is purely one of law, we may exercise our discretion to consider it on appeal, but then only in "exceptional cases * * * [in which] injustice might otherwise result." *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *see Lattimore v. Oman Constr.,* 868 F.2d 437, 439 (11th Cir.1989) (per curiam); *Hegg v. United States,* 817 F.2d 1328, 1330 n. 2 (8th Cir.1987); *Zunamon v. Brown,* 418 F.2d 883, 888 (8th Cir.1969). In addition, we may resolve an issue that was neither raised nor ruled on in the district court when "the proper resolution is beyond any doubt." *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877; *see Sanders v. Clemco Indus.,* 823 F.2d 214, 217 (8th Cir.1987). Our discretion in addressing new issues must be carefully exercised, of course, lest the exceptions swallow up the general rule disfavoring review. Fairness to the district court is also a significant consideraton. *See Struempler,* 822 F.2d at 42. In my view, none of these principles justifies the court's decision in this case. Thus, I dissent.

The government's motion for summary judgment was premised on its contention that the release Cleland signed operated as a general release, fully extinguishing the United States' liability. Similarly, Cleland's cross-motion for partial summary judgment sought relief based only on her legal argument that the release's language did not relieve the United States of liability. These issue-formulating motions did not contain the slightest hint of a contention that the executrix "lacked authority under South Dakota [probate] law to release any party other than Largent and Feedlots." *Ante* at 519.

At the hearing on the cross-motions for summary judgment, the district court expressed its view that the issues "[were] very clear," Joint App. at 139, and would "be resolved by the application of the South Dakota Uniform Contribution Among Tort-Feasor[s] Act," *id.* at 140. Cleland's counsel agreed, *id.,* and asserted his client's position that the release was "not a general release," *id.* at 152. The district court issued an oral ruling at the close of the hearing, which it later adopted in a written order dismissing the case against the United States. That ruling focused exclusively on the issues presented by the parties in their motions and arguments: whether the release Cleland signed was a general release and, if it was, the scope of that general release among the tort-feasors in this case. *See id.* at 160–67. The court recognizes, and I completely agree, that the district court correctly ruled against Cleland on this issue. *See ante* at 519.

At no time did Cleland suggest to the district court that its ruling was flawed or that the executrix's authority to sign a general release was limited by an order of the state probate court. Cleland's failure to do so is not the product of circumstances beyond her control. She was fully aware of the events leading up to her signing the release and of a potential claim against the United States. Cleland offers no excuse of

which arguments were made before the district court. In any event because the issue is one of law and because the release is clearly voidable, a grave injustice would ensue if the release were not set aside. The third argument used by the dissent is that the probate court may have re-

ceived the general release before approving the settlement. This was denied at oral argument by the executrix and was not disputed by the government. The release was dated after the court-approved settlement.

any kind for not presenting the issue below, and the district court was not obligated to search the record for unraised issues of significance. *See Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 268 (7th Cir. 1986). Merely because Cleland chose to argue the issue on appeal does not permit us to excuse her failure to raise the argument in the district court.

We may be sensitive to the significant consequences Cleland must face as a result of signing the general release. Even so, sympathetic facts do not alone justify deviating from our general rule requiring reversible errors to be raised in the district court. *See Gregory v. Honeywell, Inc.,* 835 F.2d 181, 182, 183–84 (8th Cir.1987) (seriously burned plaintiff barred from raising issue regarding tolling of statute of limitations when raised for first time on appeal). Because I believe the events surrounding Cleland's failure to raise this issue do not constitute exceptional circumstances, our refusal to consider the issue will not result in "a plain miscarriage of justice," *Hormel,* 312 U.S. at 558, 61 S.Ct. at 722.

Apart from the lack of injustice, the court's decision to take up this previously unraised issue is made even more troublesome here because the issue implicates undecided questions of South Dakota law. *See ante* at 521. I cannot imagine we will reverse the district court's ruling by delivering a blind-side blow on this aspect of the case solely on the strength of our own predictive pronouncements about unraised questions of South Dakota law. Indeed, applying the general rule against considering new issues on appeal "is particularly appropriate * * * [when] the issue * * * is not clearly resolved under existing [state] law." *Zunamon,* 418 F.2d at 888. In those circumstances, the district court is in the best position to interpret state law and should be given the first opportunity to consider the question. *See id.*

I can only speculate, but the court apparently passes off these concerns by assuming its ruling involves a pure question of state law for which the pertinent factual record is fully developed. *See Hegg,* 817

F.2d at 1330 n. 2; *Wright v. Newman,* 735 F.2d 1073, 1076 (8th Cir.1984). The record, however, contains critical factual deficiencies that undercut either of those assumptions.

Cleland undeniably sought court authority to settle claims with Largent and Feedlots. Joint App. at 66–68. Her adult children consented to the settlement. *See id.* at 107–10; *see also* S.D.Codified Laws § 21–5–6 (1984 Rev.) ("If all the statutory beneficiaries are of full age and competent and consent in writing to the proposed settlement, the [settlement] may be made at any time, before or after suit, without the consent of [the] court."). The probate court then approved settlement of those claims in extremely broad language. *See* Joint App. at 69 ("[T]he settlement made by the [e]xecutrix * * * with * * * Largent * * * and * * * Feedlots * * * for any and all claims, both known and unknown[,] arising out of the death of [Cleland's former husband], [is] approved, confirmed[,] and allowed."). Cleland signed the general release, which necessarily accomplished the probate court's settlement directive, a few days later.

The record fails to demonstrate, however, whether the probate court reviewed the general release document before approving the settlement. Indeed, Cleland's chronological recitation of the historical, undisputed facts in this case sheds no light on whether the release was or was not presented to the probate court when the settlement was approved. Nor did counsel at oral argument (apart from Cleland's counsel's recollection at the podium, which is not evidence) provide definitive answers that would permit us to bypass the requirement of a developed factual record on this pivotal question.

This undetermined fact is significant because if the court actually saw the release Cleland later signed, the court knew the release was a general release and approved it in that form. If the court did not see the general release, the broad language in its order approving the settlement suggests the court was aware of the interests of the settling parties in extinguishing the com-

mon liability of all joint tort-feasors as a prerequisite to seeking contribution. *See* S.D.Codified Laws § 15–8–14 (1984 Rev.). For these reasons, the state law rule the court seeks to decree today is hardly "clear," *ante* at 520, and the factual record necessary for its complete determination is in any event deficient, *see St. Louis Developmental Disabilities Treatment Center Parents' Ass'n v. Mallory,* 767 F.2d 518, 521 (8th Cir.1985). Thus, the issue made dispositive by the court is neither purely one of law, *see Hegg,* 817 F.2d at 1330 n. 2, nor "beyond any doubt," *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877; *see Sanders,* 823 F.2d at 217.

The uncertainty of the proper result under South Dakota law based on the record in this case further underscores the need to refrain from considering an unraised issue on which we are not favored by the local district court's ruling. *See Zunamon,* 418 F.2d at 888. To nevertheless reverse is not only decidedly unfair to the district court and at odds with our appellate role in this dispute, but it also takes the United States by complete surprise and decides a case on an issue "upon which [the United States has] had no opportunity to introduce evidence," *Hormel,* 312 U.S. at 556, 61 S.Ct. at 721.

In sum, our task is evenhandedly to resolve issues that have been aired in the district court and not to take up the sword of advocacy to generate a particular result for any given litigant. I believe the applicable rules of appellate review compel us to affirm the district court on the state law issue that is before us to decide. I thus dissent.